John Heenan
**HEENAN & COOK, PLLC**
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
Email: john@lawmontana.com
Attorney for Plaintiffs

### UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| **LISA VAUGHN, BARBARA SCOLARO, JORDAN JAROSKY,** on behalf of themselves and all others similarly situated, | Case No. CV-25-52-BU-JTJ |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| **DRINK LMNT, INC., dba LMNT,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant

to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1.     Plaintiffs Lisa Vaughn, Barbara Scolaro, and Jordan Jarosky ("Plaintiffs") bring this proposed class action on behalf of themselves and similarly-situated purchasers of Drink LMNT, Inc. dba LMNT ("LMNT" or "Defendant") flavored electrolyte drink mix (the "Products"), challenging the conduct of LMNT in the advertising, marketing, and sale of its Products, which are developed, manufactured, marketed and sold for consumption to the general public.

2.     Specifically, the use of the phrases, currently and in the past, including "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly" on advertisements and the label of the Products, leads reasonable consumers to believe that the Products contain no unlisted ingredients, especially artificial fillers. However, these practices are false and misleading because the Products contain maltodextrin, a highly processed and synthetic ingredient, which is both a preservative and a flavoring agent. Maltodextrin is not listed on the LMNT flavored electrolyte drink mix ingredients listed on the packaging.

3.     Plaintiffs and Class members have reasonably relied on Defendant's deceptive labeling and advertising of the Products, reasonably believing that the Products do not contain artificial fillers.

4.     Plaintiffs and Class members purchased the Products and paid a premium price based on Defendant's advertising of the Products as containing "All Natural Ingredients", "No Artificial Ingredients", and "No Dodgy Ingredients", and being compatible with the Paleo and Keto diets, as which is seen as a premium as consumers seek to avoid artificial and unlisted ingredients in their foods and beverages. Had Plaintiffs and Class members been aware of the truth about the Products, they would not have purchased them, or would have paid significantly less for them. Accordingly, Plaintiffs and Class members have been injured by Defendant's deceptive business practices.

5.     Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated. Plaintiffs seek to represent an Arkansas Class and a California Class (collectively referred to as the "Classes").

6.     Defendant's false and misleading representations present a continuing threat to Plaintiffs and consumers, and as such, the conduct is ongoing. Plaintiffs have a significant probability of future harm because of the ongoing, highly technical, and not readily apparent misrepresentations when purchasing the Products. While some of the representations have been removed from current

advertising to likely deter future litigation, Defendant continues to prevalently display its misrepresentations and fails to sufficiently notify a reasonable consumer, like Plaintiffs, as to the true ingredients in its Products. Reasonable consumers cannot properly evaluate the Products' actual ingredients and are left to believe LMNT's misrepresentations are accurate.

7.    Plaintiffs suffered damages resulting from LMNT's actions and omissions. Accordingly, Plaintiffs bring this class action asserting claims against LMNT for violations of consumer protection and false advertising statutes, unjust enrichment, and negligent misrepresentations.

8.    Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## **<u>JURISDICTION</u>**

9.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home states; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.    This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in Montana, and intentionally and purposefully

placed the Products into the stream of commerce within Montana and throughout the United States.

11.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial District. Namely, Defendant lists in filings to the SEC that its principal office is in Big Sky, Montana, which is in this judicial District. Defendant operates in both the United States and Canada.

## PARTIES

12.    Plaintiff Lisa Vaughn is a resident of Gassville, Arkansas. Plaintiff Vaughn purchased and was a frequent consumer of LMNT's Products for multiple years, with her first purchase coming directly from LMNT in 2021. For example, Plaintiff Vaughn purchased LMNT Recharge Variety Pack on August 1, 2023, while she was physically located in the state of Arkansas, for $20.28 directly from LMNT's website. When purchasing the Products, Plaintiff Vaughn was presented with the misrepresentation that the products were all natural and contained no artificial ingredients. Plaintiff Vaughn has spent at least $1,900.00 on LMNT Products purchased directly from LMNT. Plaintiff Vaughn would not have purchased this product, or would have paid less for it, had she known that this misrepresentation was false.

13.    Plaintiff Barbara Scolaro is a resident of Los Angeles, California. Plaintiff Scolaro purchased and was a frequent consumer of LMNT's Products for multiple years. For example, Plaintiff Scolaro purchased the LMNT Recharge Variety Pack on February 21, 2023, while she was physically located in the state of California, for $20.00 directly from LMNT's website. Plaintiff Scolaro made many purchases just like that first order directly from LMNT's website. When purchasing the Products, Plaintiff Scolaro was presented with the misrepresentation that the products were all natural and contained no artificial ingredients. Plaintiff Scolaro would not have purchased this product, or would have paid less for it, had she known that this misrepresentation was false.

14.    Plaintiff Jordan Jarosky is a resident of Bozeman, Montana. Plaintiff Jarosky purchased and was a frequent consumer of LMNT's Products for multiple years. For example, Plaintiff Jarosky purchased the LMNT Keto Electrolyte Powder Packets – Citrus Salt on March 27, 2022, while he was physically located in the state of Montana, for $45.00 sold by LMNT on Amazon's website. Plaintiff Jarosky made many purchases just like that first order from Amazon, sold by LMNT. When purchasing the Products, Plaintiff Jarosky was presented with the misrepresentation that the products were all natural, as the description on Amazon.com specifically stated "No Artificial Ingredients." Plaintiff Jarosky has spent over $700.00 on LMNT Products purchased from Amazon. Plaintiff Jarosky would not have

purchased this product, or would have paid less for it, had he known that this misrepresentation was false.

15.    Drink LMNT, Inc.'s principal place of business is in Big Sky, Montana, and LMNT's mailing address is 1925 Grand Avenue, Suite 129, Billings, Montana 59102. LMNT is responsible for the formulation, ingredients, manufacturing, naming, advertising, marketing, and sale of the Products in the United States and Canada, and specifically in this District.

## STATEMENT OF FACTS

16.    This case arises from Defendant LMNT's deceptive and misleading practices with respect to its marketing and sale of its flavored electrolyte drink mix Products, which are sold in a variety of flavors.

17.    Defendant, directly and/or through its agents, formulated, manufactured, labeled, marketed, distributed and sold the Products across the United States. The Products are sold through third-party retailers, including, but not limited to, Amazon, Thrive Market, Walmart, Target, and other major stores around the country.

18.    During the relevant statute of limitations period, Defendant sold the Products labeled, marketed, and sold using of the phrases "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-

Keto Friendly," but the Products contain maltodextrin, a highly processed ingredient. Maltodextrin is so highly processed that the ingredient is considered artificial. So much so, that even federal regulations recognize it as synthetic. *See* 72 Fed. Reg. 62149, 62166 (proposed Nov. 2, 2007).

19.    Maltodextrin is not found in nature. Instead, it is produced by a variety of synthetic processes including, but not limited to, industrially produced by a process called hydrolysis. Hydrolysis is a common form of a chemical reaction where water is mostly used to break down the chemical bonds that exist between a particular substance.

20.    To create maltodextrin, starch from foods such as corn, rice, potato, or wheat, undergo a process through partial hydrolysis, which involves cooking the starch at a very high temperature and mixing it with enzymes or acids until they are broken down into a white powder. This process breaks down the long chains of glucose molecules into shorter chains.

21.    In basic terms, maltodextrin is used to impart a sweet flavor into a food or drink product. This is because maltodextrin can be used instead of sugar since the two share similar properties.

22.    Consumption of manufactured maltodextrin has been associated with adverse health events like spikes in blood sugar, gastrointestinal symptoms such as cramping and bloating, and causing intestinal disorders by aiding the bacteria known

to hurt the intestine.[1] Moreover, research has identified several health issues including cancer, Alzheimer's disease, kidney damage, reproduction difficulties, and allergies that can be caused due to maltodextrin produced from genetically modified corn.[2]

23.    For commercially produced maltodextrin, the chemical method, i.e. acid hydrolysis, is the most common modification because it can be readily and easily controlled in comparison to enzymatic hydrolysis.[3]

24.    The United States Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

---

[1] Karthik Kumar, MBBS, *What is Maltodextrin, and Is It Bad for You?,* MEDICINENET,                June                6,                2024, https://www.medicinenet.com/what_is_maltodextrin_and_is_it_bad_for_you/articl e.htm (last visited May 20, 2025).

[2] *Id.*

[3] Enzymatic hydrolysis can also produce artificial maltodextrin. Research has shown that "enzymatic hydrolysis of chemically modified starches leads to the production of chemically modified maltodextrins." Monica Rosa Loizzo, *Chemically Modified Starches as Food Additive*s, MOLECULES, 2023 Nov 11;28(22):7543, available at https://pmc ncbi_nlm_nih.gov/articles/PMC10672975 (last visited May 20, 2025).

25.     Through false and deceptive naming and marketing practices, Defendant has misled consumers regarding the ingredients used in the Products.

26.     To further illustrate the deceptive practices, below are some examples of the advertising and packaging for the Products:



[4] Drink LMNT Homepage, https://drinklmnt.com, captured for March 15, 2022, archived at Wayback Machine (https://web.archive.org/web/20220315024029/https://drinklmnt.com/) (last visited May 20, 2025).



27.     Retailers also sold LMNT products using the Product descriptions that were provided by LMNT on their websites and in stores. For example, the online retailer Amazon.com used the following product description, provided by LMNT, to sell the Products:



---

[5] Drink LMNT, LMNT Zero-Sugar Electrolytes, https://drinklmnt.com/products/lmnt-recharge-electrolyte-drink (last visited May 20, 2025).

[6] Proof of Purchase from Amazon.com for Order Confirmation of LMNT Products received by Plaintiff Jarosky, dated March 27, 2022.

28.    Based on the examples above, reasonable consumers, like the Plaintiffs, are led to believe that the Product is not made with any artificial or processed ingredients, especially when they are not listed on the ingredient list, and also the online advertising and packaging state there are "All Natural Ingredients", "No Artificial Ingredients", and "No Dodgy Ingredients."

29.    In reality, however, the Products contain maltodextrin, the highly processed ingredients which can have negative harmful effects on one's health. For example, maltodextrin may affect the balance of bacteria in the gut. One recent study "suggests that people who consume maltodextrin may have a reduced number of good bacteria and an increased quantity of harmful bacteria. This could potentially lead to intestine damage and a higher risk of inflammatory bowel diseases."[7]

30.    Further, "[m]altodextrin has a higher glycemic index (GI) than table sugar. This means that maltodextrin can cause a sharp increase, or spike, in people's blood sugar shortly after they eat foods that contain it. A spike in blood glucose can cause potentially serious issues for people with diabetes or insulin resistance. This mainly occurs if blood glucose levels stay high for a long period or get to a very high level."[8]

---

[7] Joana Cavaco Silva, *What is Maltodextrin and Is It Safe?*, MedicalNewsToday, March 21, 2024, https://www.medicalnewstoday.com/articles/322426 (last visited May 20, 2025).
[8] *Id.*

31.    No reasonable person would believe that maltodextrin is a natural ingredient. The false perception that the Products do not contain artificial ingredients like maltodextrin is material to consumers' purchasing decisions because products that actually do not contain processed ingredients are universally seen as a premium. However, these practices are false and misleading because the Products contain maltodextrin, a highly processed and synthetic ingredient, which is both a preservative and a flavoring agent. Maltodextrin is not listed on the LMNT flavored electrolyte drink mix ingredients listed on the packaging.

32.    The phrases "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly," on LMNT's advertisements and the labels of the Products are material to reasonable consumers. These statements impliedly (if not explicitly) claim that the product is free from additives and fillers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among

the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[9]

33.     Recent published consumer research surveying over 400 consumers concluded: "The significance of naturalness has crucial meaning for consumers nowadays. They prefer food free from preservatives, additives or artificial ingredients for perceived naturalness of foods."[10]

34.     Consumers, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

35.     As the entity ultimately responsible for the formulation, manufacturing, naming, labeling, advertising, and sale of the Products, Defendant is responsible for the accuracy of the information conveyed about the Products, including in its naming, labeling, and marketing.

36.     Defendant knew or should have known that naming and marketing of the Products as containing "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly," is

---

[9] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/ (last visited May 20, 2025).

[10] Paulina Guzik, *Consumer Attitudes Towards Food Preservation Methods*, FOODS 2022, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC9099755/ (last visited May 20, 2025).

deceptive, and that reasonable consumers would believe that the Products did not contain highly processed fillers.

37.     On information and belief, Defendant employs professional chemists to create the chemical formulas of the Products, therefore, Defendant through its employees knew or should have known that maltodextrin is an ingredient which was present at high levels in its Products.

38.     Defendant's co-founder even claimed LMNT contained no maltodextrin.

39.     On October 19, 2024, Luis Villaseñor, who is listed online as a Co-Founder of LMNT, posted on Twitter/X, stating, "LMNT doesn't have maltodextrin."

40.     The next day, on October 20, 2024, Robb Wolf, another Co-Founder of LMNT, posted on Twitter/X:



41.    In addition, LMNT's online advertising also misrepresents the ingredient list for the drink mix Products, as maltodextrin is not listed under:



42.    Recently, LMNT admitted on its website that its Products contain an excessive amount of maltodextrin that was never disclosed to customers. The website now states:

**Let's Talk About Maltodextrin**

*UPDATE: We recognize and honor that LMNT is a companion on many unique health journeys, which is why we're actively working to address concerns raised by folks who are sensitive to maltodextrin (even in small amounts). We know the flavored drink mix doesn't work for everyone, and offer LMNT Raw Unflavored Drink Mix and LMNT Sparkling as options which do not contain maltodextrin. You can also use this free recipe to make it yourself at home.*

---

[11] Drink LMNT, Ingredients, https://drinklmnt.com/pages/ingredients/ (last visited May 20, 2025).

*Today, each stick pack of flavored LMNT contains ~300mg of maltodextrin as the flavor carrier (+/-10% based on stick pack variability). The exact amount depends on the amount of flavor used; Citrus Salt has a bit less natural flavor and thus a bit less maltodextrin, and Mango Chili has a bit more (450mg, +/-10%) due to its higher flavor intensity. The maltodextrin used in LMNT is gluten-free, GMO-free, and derived from corn. While we highlight and examine maltodextrin in this article, it's not included on our labels because it's a flavor carrier rather than an added ingredient. We continue to listen to our community on their personal health journeys and are in the process of evaluating other flavor carriers.*

*Many folks ask me whether the maltodextrin in LMNT will increase blood sugar levels. Maltodextrin has a high glycemic index, so the question makes sense. However, our flavored drink mixes only contain between ~1–2 calories of maltodextrin. Many folks in our community have shared that their Continuous Glucose Monitor data show no significant blood sugar increases from drinking LMNT. But of course, I encourage you to test it yourself, and to always make your own choices when it comes to your health.*[12]

43.    By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

44.    Plaintiffs and other consumers were injured by the foregoing deceptive advertising because they paid a premium for the Products based on the false

---

[12] Robb Wolf, Drink LMNT, *What's the Deal with Natural Flavors?,* https://science.drinklmnt.com/did-you-know/natural-flavors/  (last visited May 20, 2025).

perception that the Products did not contain any artificial fillers or ingredients, or fillers or ingredients not listed in the ingredient list. Had Plaintiffs and other consumers known the Products were made with maltodextrin, a highly processed and synthetic ingredient, they would have purchased a different product, or paid significantly less for the Products. In fact, Plaintiffs have stopped ingesting and purchasing LMNT products after learning of the inclusion of maltodextrin as an ingredient. As such, Plaintiffs and members of the putative Classes have been injured.

45.    As Defendant did not disclose that maltodextrin is contained in the Product initially, Plaintiffs did not discover the products contained maltodextrin until after it was publicly disclosed on October 20, 2024.

46.    Discovering that the Products contain maltodextrin or other ingredients that are not natural and are actually synthetic requires an investigation beyond that of the skills of the average consumer. That is why the reasonable consumer would not understand – nor are they expected to understand – that these ingredients are synthetic.

47.    Consumers rely on advertising and label representations and information in making purchasing decisions.

48.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiffs and the Class Members.

49.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled and advertised using the phrases "All Natural Ingredients", "No Artificial Ingredients", and "No Dodgy Ingredients", over comparable products not so labeled and marketed.

## CLASS ACTION ALLEGATIONS

50.    There are hundreds of thousands of Class members across the United States who have purchased LMNT's Products.

51.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs brings this suit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

**All persons in the United States who purchased a LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

52.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Scolaro brings this suit on behalf of herself and a California-statewide class (the "California Class" or "Subclass") defined as follows:

**All persons who reside in California who purchased an LMNT Product, during the maximum period of time permitted by law,**

**primarily for personal, family, or household consumption, and not for resale.**

53.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Vaughn brings this suit on behalf of herself and an Arkansas-statewide class (the "Arkansas Class" or "Arkansas Subclass") defined as follows:

> **All persons who reside in Arkansas who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

54.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Jarosky brings this suit on behalf of himself and a Montana-statewide class (the "Montana Class" or "Montana Subclass") defined as follows:

> **All persons who reside in Montana who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

55.    Plaintiffs specifically exclude LMNT, its employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

56.    The definitions of the Class and Subclasses are unambiguous, and Plaintiffs are members of the Class and Subclasses they seek to represent.

57.    Plaintiffs reserve the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

58.    The Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Discovery to date has shown that the Class numbers in the hundreds of thousands.

59.    The Subclasses are so numerous and geographically dispersed that joining all the members would be impracticable. The exact number of members in the Subclasses is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe the Subclasses each consist of at least 100 members.

60.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased an LMNT Product that was sold with misleading labeling and suffered a pecuniary loss as a result of the purchase. Plaintiffs' claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Classes. All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiffs, suffered the same

type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

61.    Plaintiffs' claims are typical of the claims of the Subclasses because Plaintiffs purchased LMNT's Products sold with misleading advertising and labeling and suffered a pecuniary loss as a result of the purchase. The Subclass Plaintiffs' claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

62.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and the Subclasses and have retained counsel competent and experienced in class action litigation.

63.    LMNT has acted or refused to act on grounds generally applicable to the Class and the Subclasses, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclasses as a whole.

Specifically, LMNT continues to misrepresent ingredients and makeup of its Products, continues to use them, making the harm to purchasers ongoing, including Plaintiffs who intend to be in the market to purchase other electrolyte beverages in the future. Because Defendant continues to use and promote its misrepresentations in the marketing and sale of its Products, Plaintiffs, members of the Class and the Subclasses, and future purchasers will be similarly misled about the Products thereby causing them to pay a price premium for inaccurate representations.

64.    Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

   a.    The nature of LMNT's promotion of its Products' representations;

   b.    Whether LMNT misrepresented the ingredients and fillers in its Products;

   c.    Whether LMNT knew or should have known its claims regarding the advertising, packaging and its ingredients were false and/or misleading;

   d.    Whether LMNT's representations were material to consumers and the market;

e.    Whether LMNT placed representations on its advertisements and packaging;

f.    Whether LMNT provided point of sale materials to retailers for use in promoting LMNT's Products and whether those materials included misleading references to ingredients;

g.    Whether LMNT's misleading representations caused it to receive money that it would not have received absent those representations;

h.    Whether Plaintiffs and the Class paid more for the Products than they would have paid absent LMNT's misleading representations;

i.    Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and,

j.    Whether the Court should enjoin LMNT from continuing to misrepresent the Products' ingredients.

65.    Resolution of each of these issues will turn upon evidence common to all Class members.

66.    Resolution of issues common to all Class members will predominate over individual issues.

67.    The issues common to the Class and the nature of the common relief creates a cohesive class for injunctive relief.

68.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

    a.    It will avoid a multiplicity of suits and consequent burden on the courts and LMNT;

    b.    It would be virtually impossible for all members of the Class and/or Subclasses to intervene as parties-plaintiffs in this action;

    c.    It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

    d.    It will provide court oversight of the claims process, once LMNT's liability is adjudicated;

    e.    It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

    f.    It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporation, LMNT.

69.    Plaintiffs and the proposed Class and Subclasses satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

70.    Plaintiffs are not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## <u>COUNT I</u>
### Negligent Misrepresentation

**(on behalf of the Nationwide Class / Asserted in the Alternative on behalf of the Subclasses)**

71.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

72.    Plaintiffs bring this claim on behalf of the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

73.    In the course of business, LMNT misrepresented that the Products do not contain such artificial fillers and ingredients that they indeed do contain. LMNT had a duty to disclose the truthful makeup of its Products rather than the misrepresented information.

74.    LMNT supplied the Plaintiffs and Class members false and misleading information in which a reasonable consumer would have used as guidance in evaluating the Products.

75.    At the time Defendant made these misrepresentations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

76.    LMNT negligently misrepresented and/or at a minimum, negligently omitted material facts concerning the Products.

77.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class members to purchase the Products.

78.    Plaintiffs and Class members would not have purchased the Products or would have paid considerably less, if the true facts concerning the makeup of the Products and the ingredients included had been known.

79.    LMNT's deceitful actions have caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT II
### Unjust Enrichment/Restitution
### (on behalf of the Nationwide Class / Asserted in the Alternative on behalf of the Subclasses)

80.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

81.    Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

82.    Defendant received a benefit from Plaintiffs and the members of the Nationwide Class and State Subclass in the form of payment for the Products.

83.    Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in the unlawful, unjust, and wrongful acts, omissions, and practices described in this Complaint.

84.    The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned and came at the expense of Plaintiffs and the other members of the Nationwide Class and State Subclass.

85.     Defendant knew or should have known that the Products can physically harm the consumers that purchased the Products, but nonetheless continues to sell the Products without warning.

86.     Defendant's conduct is unjust, inequitable, and wrongful, but systematically engage in this conduct anyway in order to gain unfair advantages and reap unearned financial benefits.

87.     There is no justification for Defendant's continued silence as customers purchased the Products.

88.     It is therefore against equity and good conscience to permit Defendant to retain the proceeds from its sales of the improperly advertised and labeled Products.

89.     Plaintiffs and the Nationwide Class are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## COUNT III
### Violation Of California's False Advertising Law ("FAL")
### California Civil Code §§ 17500, et seq.
### (on behalf of the California Subclass)

90.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

91.     Plaintiff Scolaro brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

92.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

93.    Defendant violated the FAL by publicly disseminating misleading and false advertisements for the Products through the labeling of the Products as containing "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients," when the Products contained maltodextrin.

94.    Defendant's false and misleading representation was made in order to increase sales of the Products.

95.    Plaintiff Scolaro and members of the California Subclass would not have bought the Products, or would have paid considerably less for them, had they known that the representations were false and misleading, and that the Products were made with maltodextrin—an artificial flavor and artificial ingredient.

96.    Plaintiff Scolaro and members of the California Subclass seek an order requiring Defendant to: (a) make full restitution for all monies wrongfully obtained;

and (b) disgorge all ill-gotten revenues and/or profits. Plaintiff Scolaro also seeks all other available relief as pleaded in this Complaint.

**COUNT IV**
**Violation Of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200, et seq.**
**(on behalf of the California Subclass)**

97.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

98.    Plaintiff Scolaro brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

99.    Plaintiff Scolaro and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

100.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

101.    In the course of conducting business, Defendant engaged in "unlawful" business practices by violating 21 C.F.R. § 101.18(b), Cal. Civ. Code § 1770, Cal. Bus. & Prof. Code § 17500, and the other laws referenced herein.

102.    As a result of Defendant's unlawful business acts and practices, Defendant has and continue to unlawfully obtain money from Plaintiff Scolaro and members of the California Classes.

103.  Defendant's foregoing business practices are also "unfair" under the UCL, which states that unfair acts are acts where the reasons, justifications and motivations of Defendant are outweighed by the harm to Plaintiff Scolaro and other California consumers.

104.  A business practice is also considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct alleged causes an injury which is not outweighed by any benefits to other consumers or to competition, and that the injury is of the type that the consumer could not have avoided. Defendant's conduct is "unfair" pursuant to the UCL under each of the three tests described in these paragraphs.

105.  Defendant's behavior constitutes unfair business practices under California law.

106.  Defendant's retention of Plaintiff Scolaro and California Class member's payments for the Products outweighs the economic harm that said retention imposes on consumers. The only party that benefits is Defendant. There is no benefit to deceiving consumers regarding the ingredients in the Products they are consuming, particularly when Defendant is charging a premium for this false perception. Defendant's sale of the Products with the "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients," statements discussed herein are immoral, unethical, oppressive, and substantially injures consumers.

107.    As Defendant continues to unfairly retain Plaintiff Scolaro's and members of the California Subclass's payments for the Products, this conduct continues to be unfair under California law. This is exactly the type of unscrupulous and inexcusable business practice that the UCL was enacted to address.

108.    Defendant's representations are also "fraudulent" under the UCL because they have the effect of deceiving consumers into believing that the Products are comprised of only certain ingredients when they are not.

109.    Defendant knew, or should have known, its material misrepresentation would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant under the false impression about the Products.

110.    As a result of Defendant's conduct, Plaintiff Scolaro and members of the California Subclass have suffered injury-in-fact by paying more for the Products than they otherwise would have. Plaintiff Scolaro requests that the Court issue sufficient equitable relief to restore her and members of the Classes to the position they would have been had Defendant not engaged in unfair business practices.

111.    Defendant also violated the unlawful prong of the UCL by falsely advertising and labeling the LMNT Products in violation of the Sherman Food, Drug, and Cosmetic Act, including (but not limited to) Cal. Health & Safety Code Ann. § 110390, Cal. Health & Safety Code Ann. § 110395, and Cal. Health & Safety Code Ann. § 110398.

112.    Plaintiff Scolaro and members of the California Subclass seek an order requiring Defendant to: (a) make full restitution for all monies wrongfully obtained; and (b) disgorge all ill-gotten revenues and/or profits. Plaintiff Scolaro also seeks all other available relief as pleaded in this Complaint.

**COUNT V**
**Violation of the Arkansas Deceptive Trade Practices Act**
**Arkansas Code § 4-88-107**
**(on behalf of the Arkansas Class)**

113.    Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

114.    Arkansas' Deceptive Trade Practices Act, AR Code §4-88-107(a) ("ADTPA"), defines "[d]eceptive and unconscionable trade practices made unlawful" to include "[e]ngaging in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade" or "[k]nowingly facilitating, assisting, intermediating, or in any way aiding the operation or continuance of an act or practice that is in violation" of the act. AR Code §4-88-107(a)(11)-(12).

115.    Defendant's conduct constitutes unlawful deceptive and unconscionable trade practices. Defendant's conduct was consumer-oriented and this conduct had broad impact on consumers at large. Defendant engaged in false, misleading and unlawful advertising, marketing and labeling of Defendant's

Products. Defendant's manufacturing, distribution and sale of Defendant's Products were similarly unlawful.

116.   Defendant unlawfully sold Defendant's Products in Arkansas during the Class Period.

117.   As fully alleged above, by advertising, marketing, distributing and selling mislabeled and misbranded Defendant's Products to Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas, Defendant engaged in, and continue to engage in, unlawful deceptive and unconscionable trade practices.

118.   Defendant's misleading marketing, advertising, packaging and labeling of Defendant's Products were likely to deceive reasonable consumers.

119.   Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were deceived.

120.   Defendant has engaged in unlawful deceptive and unconscionable trade practices.

121.   Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were injured by Defendant's unlawful deceptive and unconscionable trade practices.

122.   Defendant's fraud and deception caused Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas to purchase

Defendant's Products that they would otherwise not have purchased or would have paid less for had Plaintiffs known the true nature of these products.

123.   Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were injured as a result of Defendant's unlawful deceptive and unconscionable trade practices.

124.   In violation of the labeling laws of the state of Arkansas and A.C.A. §§ 4-88-107 and 4-88-108, Defendant sold to Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas, a product that was not capable of being sold legally, and which has no economic value. Defendant's violation of A.C.A. §§ 4-88-107 and 4-88-108 remains ongoing.

125.   As a direct and proximate cause of Defendant violation of A.C.A. §§ 4-88-107 and 4- 88-108, Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas were injured when they paid for these mislabeled products. Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas have been damaged in an amount to be determined at trial.

126.   As a result of Defendant's unlawful deceptive and unconscionable trade practices, Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas, pursuant to A.C.A. § 4-88-113 and A.C.A. §§ 4-88-107 and 4-88-108, are entitled to damages and such other orders and

judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas any money paid for Defendant's Products.

<u>COUNT VI</u>
**Violation of the Montana Unfair Trade Practices & Consumer Protection Act
Mont. Code Ann. § 30-14-101, et seq.
(on behalf of the Montana Class)**

127.  Plaintiffs restate and incorporate all other allegations in this Complaint as though fully pled herein.

128.  The Montana Unfair Trade Practices and Consumer Protection Act ("MCPA") prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Mont. Code Ann. § 30-14-103.

129.  Plaintiffs and members of the Montana Subclass are consumers under the MCPA because they purchased LMNT Products primarily for personal, family, or household purposes. *See* Mont. Code Ann. § 30-14-102(1).

130.  By the conduct described in detail above and incorporated herein, Defendant engaged in unfair and deceptive acts and practices in the conduct of trade and commerce. Defendant's acts and practices directly and indirectly affected the people of Montana.

131.  Defendant's conduct was deceptive because it was likely to mislead consumers.

132.    Defendant's conduct was unfair because it offends established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

133.    As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and members of the Montana Subclass have suffered ascertainable loss and actual damages. Plaintiffs and members of the Montana Subclass would not have purchased the LMNT Products, or would have paid less for them, had they known that the LMNT products contained artificial ingredients.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1.    Certify the proposed Class and Subclass and appoint Plaintiffs and their legal counsel to represent the Class and Subclass;

2.    Find in favor of Plaintiffs, the Class, and the Subclass on all counts asserted herein;

3.    Declare that LMNT's conduct violated the statutes referenced herein;

4.    Award Damages, including compensatory, exemplary, and statutory to Plaintiffs, the Class, and the Subclass in an amount to be determined at trial;

5. Grant restitution to Plaintiffs, the Class, and the Subclass and require LMNT to disgorge its ill-gotten gains;

6. Award Plaintiffs, the Class, and the Subclasses punitive damages in an amount to be determined at trial;

7. Award Plaintiffs, the Class, and the Subclasses reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8. Enjoin LMNT from future misrepresentations regarding the Products;

9. Declare the parties' rights and obligations under the warranties applicable to the Products' sales and under the law of the relevant states;

10. Award Plaintiffs, the Class, and the Subclasses pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

11. Order any such other and further relief the Court deems just and equitable.

*//*

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated this 23rd day of May, 2025.

Respectfully submitted,

*/s/ John Heenan*
John Heenan
**HEENAN & COOK, PLLC**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

Terence R. Coates*
Jonathan T. Deters*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

*Counsel for Plaintiffs and the Putative Class*

*\* pro hac vice forthcoming*