John Heenan
**HEENAN & COOK, PLLC**
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
Email: john@lawmontana.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| **LISA VAUGHN, BARBARA SCOLARO, JORDAN JAROSKY,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DRINK LMNT, INC., dba LMNT,**<br><br>Defendant. | Case No. 2:25-cv-00052-JTJ<br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1.     Plaintiffs Lisa Vaughn, Barbara Scolaro, and Jordan Jarosky ("Plaintiffs") bring this proposed class action on behalf of themselves and similarly-situated purchasers of Drink LMNT, Inc. dba LMNT ("LMNT" or "Defendant") flavored electrolyte drink mix (the "Products"), challenging the conduct of LMNT in the advertising, marketing, and sale of its Products, which are developed, manufactured, marketed and sold for consumption to the general public.

2.     Specifically, the use of the phrases, currently and in the past, including "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly" on advertisements and the label of the Products, leads reasonable consumers to believe that the Products contain no artificial ingredients. However, these practices are false and misleading because all of the Products contain significant amounts of maltodextrin, a highly processed ingredient not found in nature that functions in the finished product as a flavor carrier. The inclusion of maltodextrin is not disclosed.

3.     Plaintiffs and Class members have reasonably relied on Defendant's deceptive labeling and advertising of the Products, reasonably believing that the Products do not contain artificial ingredients.

4.     Plaintiffs and Class members purchased the Products and paid a premium price based on Defendant's advertising of the Products as containing "All

Natural Ingredients", "No Artificial Ingredients", and "No Dodgy Ingredients", and being compatible with the Paleo and Keto diets, as which is seen as a premium as consumers seek to avoid artificial and unlisted ingredients in their foods and beverages. Had Plaintiffs and Class members been aware of the truth about the Products, they would not have purchased them, or would have paid significantly less for them. Accordingly, Plaintiffs and Class members have been injured by Defendant's deceptive business practices.

5.     Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated. Plaintiffs seek to represent a nationwide class, as well as subclasses consisting of Arkansas, California, and Montana residents (collectively referred to as the "Classes").

6.     Defendant's false and misleading representations present a continuing threat to Plaintiffs and consumers, and as such, the conduct is ongoing. Plaintiffs have a significant probability of future harm because of the ongoing, highly technical, and not readily apparent misrepresentations when purchasing the Products. While some of the representations have been removed from current advertising to likely deter future litigation, Defendant continues to prevalently display its misrepresentations and fails to sufficiently notify a reasonable consumer, like Plaintiffs, as to the true ingredients in its Products. Reasonable consumers

3

cannot properly evaluate the Products' actual ingredients and are left to believe LMNT's misrepresentations are accurate.

7.    Plaintiffs suffered damages resulting from LMNT's actions and omissions. Accordingly, Plaintiffs bring this class action asserting claims against LMNT for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, and negligent misrepresentations.

8.    Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## JURISDICTION

9.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home states; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.    This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in Montana, and intentionally and purposefully placed the Products into the stream of commerce within Montana and throughout the United States.

11. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District. Namely, Defendant lists in filings to the SEC that its principal office is in Big Sky, Montana, which is in this judicial District. Defendant operates in both the United States and Canada.

## **PARTIES**

12. Plaintiff Lisa Vaughn is a resident of Gassville, Arkansas. Plaintiff Vaughn purchased and was a frequent consumer of LMNT's Products for multiple years, with her first purchase coming directly from LMNT in 2021, according to her online LMNT account. While the LMNT online purchase history does not extend back to the 2021 purchase, Plaintiff Vaughn has proof of purchase of a LMNT Recharge Variety Pack on August 1, 2023, while she was physically located in the state of Arkansas, for $20.28 directly from LMNT's website. When purchasing the Products, Plaintiff Vaughn was presented with the misrepresentation that the products were all natural and contained no artificial ingredients. Plaintiff Vaughn has spent at least $1,900.00 on LMNT Products purchased directly from LMNT. Plaintiff Vaughn would not have purchased this product, or would have paid less for it, had she known that this misrepresentation was false.

13. Plaintiff Barbara Scolaro is a resident of Los Angeles, California. Plaintiff Scolaro purchased and was a frequent consumer of LMNT's Products for

multiple years. For example, Plaintiff Scolaro purchased the LMNT Keto Electrolyte Powder Packets – Variety Pack on August 27, 2022, while physically located in the state of California, sold directly by LMNT on Amazon's website for $20.00. Plaintiff Scolaro made an identical purchase from Amazon on December 13, 2022. Plaintiff Scolaro further purchased the LMNT Recharge Variety Pack on February 21, 2023, while physically located in the state of California, for $20.00 directly from LMNT's website. Plaintiff Scolaro made many purchases just like these orders directly from LMNT's website. When purchasing the Products, Plaintiff Scolaro was presented with the misrepresentation that the products were all natural, as the description on Amazon.com specifically stated "No Artificial Ingredients." Upon information and belief, LMNT is the party that provided this language on the relevant Amazon pages. Plaintiff Scolaro would not have purchased this product, or would have paid less for it, had she known that this misrepresentation was false.

14.     Plaintiff Jarod Jarosky is a resident of Bozeman, Montana. Plaintiff Jarosky purchased and was a frequent consumer of LMNT's Products for multiple years. For example, Plaintiff Jarosky purchased the LMNT Keto Electrolyte Powder Packets – Citrus Salt on March 27, 2022, while physically located in the state of Montana, for $45.00 sold directly by LMNT on Amazon's website. Plaintiff Jarosky made many purchases just like that first order from Amazon, sold directly by LMNT. When purchasing the Products, Plaintiff Jarosky was presented with the

6

misrepresentation that the products were all natural, as the description on Amazon.com specifically stated "No Artificial Ingredients." Upon information and belief, LMNT is the party that provided this language on the relevant Amazon pages. Plaintiff Jarosky has spent over $700.00 on LMNT Products purchased from Amazon. Plaintiff Jarosky would not have purchased this product, or would have paid less for it, had he known that this misrepresentation was false.

15.     Drink LMNT, Inc.'s principal place of business is in Big Sky, Montana, and LMNT's mailing address is 1925 Grand Avenue, Suite 129, Billings, Montana 59102. LMNT is responsible for the formulation, ingredients, manufacturing, naming, advertising, marketing, and sale of the Products in the United States and Canada, and specifically in this District.

## STATEMENT OF FACTS

16.     This case arises from Defendant LMNT's deceptive and misleading practices with respect to its marketing and sale of its electrolyte drink mix Products, which are sold in a variety of flavors.

17.     Defendant, directly and/or through its agents, formulated, manufactured, labeled, marketed, distributed and sold the Products across the United States. The Products are sold through third-party retailers, including, but not limited to, Amazon, Thrive Market, Walmart, Target, and other major stores around the country.

7

18.    During the relevant statute of limitations period, Defendant sold the Products labeled, marketed, and sold using of the phrases "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly," but the Products contain maltodextrin, a highly processed and artificial ingredient that a reasonable consumer would not consider to be natural.

19.    Maltodextrin is not found in nature. Instead, it is produced by a variety of synthetic processes including, but not limited to, industrially produced by a process called hydrolysis. Hydrolysis is a common form of a chemical reaction where water is mostly used to break down the chemical bonds that exist between a particular substance.

20.    To create maltodextrin, starch from foods such as corn, rice, potato, or wheat, undergo a process through partial hydrolysis, which involves cooking the starch at a very high temperature and mixing it with enzymes or acids until they are broken down into a white powder. This process breaks down the long chains of glucose molecules into shorter chains.

21.    For commercially produced maltodextrin, the chemical method, i.e. acid hydrolysis, is the most common modification because it can be readily and easily controlled in comparison to enzymatic hydrolysis.[1]

---

[1] Enzymatic hydrolysis can also produce artificial maltodextrin. Research has shown that "enzymatic hydrolysis of chemically modified starches leads to the production

22.     Maltodextrin is used to impart a sweet flavor into a food or drink product. This is because maltodextrin can be used instead of sugar since the two share similar properties.

23.     Consumption of manufactured maltodextrin has been associated with adverse health events like spikes in blood sugar, gastrointestinal symptoms such as cramping and bloating, and causing intestinal disorders by aiding the bacteria known to hurt the intestine.[2] Moreover, research has identified several health issues including cancer, Alzheimer's disease, kidney damage, reproductive difficulties, and allergies that can be caused due to maltodextrin produced from genetically modified corn.[3]

24.     Through false and deceptive naming and marketing practices, Defendant has misled consumers regarding the ingredients used in the Products.

25.     To further illustrate the deceptive practices, below are some examples of the advertising and packaging for the Products:

---

of chemically modified maltodextrins." Dorota Galkowska, *et al.*, *Chemically Modified Starches as Food Additive*s, 28 Molecules 7543, at 12 (Nov. 11, 2023), https://www.mdpi.com/1420-3049/28/22/7543/pdf   [https://web.archive.org/web/20231111154828/https://mdpi-res.com/d_attachment/molecules/molecules-28-07543/article_deploy/molecules-28-07543.pdf].

[2] Karthik Kumar, *What is Maltodextrin, and Is It Bad for You?,* MedicineNet (June 3, 2024), https://www.medicinenet.com/what_is_maltodextrin_and_is_it_bad_for_you/article.htm   [https://web.archive.org/web/20251101002039/https://www.medicinenet.com/what_is_maltodextrin_and_is_it_bad_for_you/article.htm].

[3] *Id.*

9



4

5

---

[4] Image from Drink LMNT Homepage, https://drinklmnt.com (May 22, 2022, at 19:28 GMT) [https://web.archive.org/web/20220522192830/https://drinklmnt.com].

[5] Ingredients List image for Citrus Salt flavor from *LMNT Zero-Sugar Electrolytes*, Drink LMNT (May 20, 2025, at 11:04 GMT), https://drinklmnt.com/products/lmnt-

26.    Retailers also sold LMNT products using the Product descriptions that were provided by LMNT on their websites and in stores. For example, the online retailer Amazon.com used the following product description, provided by LMNT, to sell the Products:



LMNT Keto Electrolyte Powder Packets | Paleo Hydration Powder | No Sugar, No Artificial Ingredients | Citrus Salt | 30 Stick Packs
Sold by: Drink LMNT
$45.00

Buy it again    View your item [6]

27.    Based on the examples above, reasonable consumers, like the Plaintiffs, are led to believe that the Product is not made with any artificial or processed ingredients, and also the online advertising and packaging state there are "All Natural Ingredients", "No Artificial Ingredients", and "No Dodgy Ingredients."

28.    In reality, however, the Products contain maltodextrin, an unnatural ingredient that is highly processed. Maltodextrin is not disclosed on the LMNT electrolyte drink mix ingredients or anywhere else on the packaging.

29.    No reasonable person would believe that maltodextrin is a natural or inartificial ingredient. The false perception that the Products do not contain artificial

---

recharge-electrolyte-drink?variant=16358367199266 [https://web.archive.org/web/20250511205144im_/https://res.cloudinary.com/drinklmnt/image/upload/f_auto,q_auto/v1696530194/lmnt-salt-citrus-nutrition_jz43xt.webp].

[6] Receipt from Amazon.com for Order Confirmation of LMNT Products received by Plaintiff Jarosky (Mar. 27, 2022).

ingredients like maltodextrin is material to consumers' purchasing decisions because reasonable consumers are willing to pay a premium for products that are natural, as opposed to highly processed and artificial.

30.    The phrases "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly" on LMNT's advertisements and the labels of the Products implicitly (if not explicitly) claim that the product is natural, as opposed to highly processed and artificial.

31.    The references to the paleo diet reinforce the understanding that the Products do not contain highly processed ingredients. "The Paleolithic (Paleo) Diet emulates the dietary habits of early humans during the Paleolithic era, focusing on foods presumed to have been available through hunting and gathering. Modern adaptations of this diet emphasize the consumption of lean meats, fish, fruits, vegetables, nuts, and seeds—*while excluding processed foods*, grains, legumes, and dairy products."[7]

32.    The Mayo Clinic explains the paleo diet similarly: "A paleo diet is an eating plan based on foods humans might have eaten during the Paleolithic Era. . . . The purpose of a paleo diet is to eat foods likely eaten by early humans. . . . Common

---

[7] Sharon F. Daley, *et al.*, *Paleolithic Diet*, StatPearls Publishing, LLC (Feb. 19, 2025) (emphasis added), https://www.ncbi.nlm.nih.gov/books/NBK482457/ [https://web.archive.org/web/20251101013630/https://www.ncbi.nlm.nih.gov/books/NBK482457/].

features the paleo diet has include the emphasis on fruits, vegetables, lean meats and *the avoidance of processed foods*."[8]

33.    Even LMNT's own website recognizes that paleo-keto friendly products should exclude processed ingredients: "Along with processed food, paleo excludes grains, legumes, and usually dairy (these foods can be inflammatory)."[9]

34.    The references to the keto diet similarly reinforces the lack of ingredients, fillers, or agents like maltodextrin. "Fundamentally, both paleo and keto diet plans are intended to rely on whole-food sources of nutrients. A whole food is a food that has undergone a minimal amount of processing by the time it gets to your plate. Both keto and paleo diets strongly encourage eliminating all ultra-processed foods and replacing them with whole foods like fresh vegetables, meat, fish and nuts."[10] Accordingly, a paleo-keto friendly diet requires "getting rid of refined sugar,

---

[8] *Paleo diet: What is it and why is it so popular?*, Mayo Clinic (June 21, 2024) (emphasis added), https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/paleo-diet/art-20111182 [https://web.archive.org/web/2025 0930123603/https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/paleo-diet/art-20111182].

[9] Robb Wolf, *What Is A Whole Foods Diet?*, Drink LMNT (July 11, 2025, at 12:39 GMT), https://science.drinklmnt.com/did-you-know/whole-foods-diet [https://web.archive.org/web/20250711123921/https://science.drinklmnt.com/did-you-know/whole-foods-diet].

[10] Ansley Hill, RD, LD, *What's the Difference Between Paleo and Keto Diets?*, Healthline (June 13, 2023), https://www.healthline.com/nutrition/paleo-vs-keto#which-is-best [https://web.archive.org/web/20250904020818/https://www.healthline.com/nutrition/paleo-vs-keto#similarities].

processed foods, and excess carbohydrates[.]"[11]

35.    "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods."[12]

36.    Recent published consumer research surveying over 400 consumers concluded: "The significance of naturalness has crucial meaning for consumers nowadays. They prefer food free from preservatives, additives or artificial ingredients for perceived naturalness of foods."[13]

---

[11] *Combining The Paleo and Keto Diet: What You Need To Know,* Hunter & Gather (Feb. 11, 2022), https://hunterandgatherfoods.com/blogs/real-food-lifestyle/combining-the-paleo-and-keto-diet-what-you-need-to-know [https://web.archive.org/web/20250814122032/https://hunterandgatherfoods.com/blogs/real-food-lifestyle/combining-the-paleo-and-keto-diet-what-you-need-to-know]; *see also Foods to eat on a paleo keto diet,* Diabetes.co.uk (Oct. 29, 2023), https://www.diabetes.co.uk/paleo-keto/foods-to-eat-on-paleo-keto-diet.html [https://web.archive.org/web/20250520003609/https://www.diabetes.co.uk/paleo-keto/foods-to-eat-on-paleo-keto-diet.html] (similar).

[12] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/ [https://web.archive.org/web/20250710035422/https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/].

[13] Paulina Guzik, *et al.*, *Consumer Attitudes Towards Food Preservation Methods*, 11 Foods 1349, at 7 (6 May, 2022), https://www.mdpi.com/2304-8158/11/9/1349/pdf [https://web.archive.org/web/20250626231058/https://mdpi-res.com/d_attachment/foods/foods-11-01349/article_deploy/foods-11-01349.pdf].

37.    Consumers, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

38.    As the entity ultimately responsible for the formulation, manufacturing, naming, labeling, advertising, and sale of the Products, Defendant is responsible for the accuracy of the information conveyed about the Products, including in its naming, labeling, and marketing.

39.    Defendant knew or should have known that naming and marketing of the Products as containing "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", "Vegan Friendly", and "Paleo-Keto Friendly," is deceptive, and that reasonable consumers would believe that the Products did not contain highly processed fillers.

40.    In addition to affirmative misrepresentations, the omission of maltodextrin as an ingredient is highly deceptive and misleading to a reasonable consumer.

41.    The omission of maltodextrin from the Products' labeling violates the federal and state laws.

42.    On information and belief, Defendant employs professional chemists to create the chemical formulas of the Products. Therefore, Defendant through its

employees or agents knew or should have known that maltodextrin is an ingredient which was present at high levels in its Products.

43.    Defendant initially represented that LMNT contained no maltodextrin.

44.    For example, on October 19, 2024, Luis Villaseñor, who is listed online as a Co-Founder of LMNT, posted on Twitter/X, stating, "LMNT doesn't have maltodextrin."

45.    The next day, on October 20, 2024, Robb Wolf, another Co-Founder of LMNT, posted on Twitter/X:



46.    In addition, LMNT's online advertising also misrepresents the ingredient list for the drink mix Products, as maltodextrin is not listed:



47.    Eventually, LMNT admitted on its website that its Products contain an excessive amount of maltodextrin that was never disclosed to customers. This includes the following statement:

**Let's Talk About Maltodextrin**

*UPDATE: We recognize and honor that LMNT is a companion on many unique health journeys, which is why we're actively working to address concerns raised by folks who are sensitive to maltodextrin (even in small amounts). We know the flavored drink mix doesn't work for everyone, and offer LMNT Raw Unflavored Drink Mix and LMNT Sparkling as options which do not contain maltodextrin. You can also use this free recipe to make it yourself at home.*

---

[14]    *Ingredients: What ingredients are in LMNT?*, Drink LMNT, https://drinklmnt.com/pages/ingredients/ (last visited Oct. 31, 2025).

Today, each stick pack of flavored LMNT contains ~300mg of maltodextrin as the flavor carrier (+/-10% based on stick pack variability). The exact amount depends on the amount of flavor used; Citrus Salt has a bit less natural flavor and thus a bit less maltodextrin, and Mango Chili has a bit more (450mg, +/-10%) due to its higher flavor intensity. The maltodextrin used in LMNT is gluten-free, GMO-free, and derived from corn. While we highlight and examine maltodextrin in this article, it's not included on our labels because it's a flavor carrier rather than an added ingredient. We continue to listen to our community on their personal health journeys and are in the process of evaluating other flavor carriers.

Many folks ask me whether the maltodextrin in LMNT will increase blood sugar levels. Maltodextrin has a high glycemic index, so the question makes sense. However, our flavored drink mixes only contain between ~1–2 calories of maltodextrin. Many folks in our community have shared that their Continuous Glucose Monitor data show no significant blood sugar increases from drinking LMNT. But of course, I encourage you to test it yourself, and to always make your own choices when it comes to your health.[15]

48.    The disclosure above demonstrates that maltodextrin is a key ingredient that is present at significant levels in all of the Products.

49.    For example, the post above states that the mango chili flavor contains 450mg of maltodextrin (+/- 10%). To put this in perspective, the top four listed ingredients in the mango chili drink mix are "Salt (Sodium Chloride), Malic Acid,

---

[15] Robb Wolf, *What's the Deal with Natural Flavors?*, Drink LMNT (Apr. 1, 2025, at 08:55 GMT), https://science.drinklmnt.com/did-you-know/natural-flavors/ [https://web.archive.org/web/20250401085555/https://science.drinklmnt.com/did-you-know/natural-flavors/].

Magnesium Malate, [and] Potassium Chloride." However, there is 1000mg of sodium, 200mg of potassium, and 60mg of magnesium in a serving of mango chili LMNT drink mix. This means that despite the labeling (depicted below), maltodextrin is in fact (at least) the third most prominent ingredient, with a volume more than 2x the listed potassium and more than 7x the listed magnesium.



[16]

---

[16] Ingredients List image for Mango Chili flavor from *LMNT Zero-Sugar Electrolytes*, Drink LMNT, https://drinklmnt.com/products/lmnt-recharge-electrolyte-drink?variant=31703772659735 [https://web.archive.org/web/20251101031410im_/https://res.cloudinary.com/drinklmnt/image/upload/f_auto,q_auto/v1759896966/lmnt-salt-mango-chili-nutrition_i3h0xd.webp].

50.    This comparison even holds true for the citrus salt flavor, which (according to LMNT) has the least amount of maltodextrin, i.e., "a bit less" than "300mg of maltodextrin . . . (+/-10% based on stick pack variability)." According to the labeling of citrus salt flavor LMNT drink mix on LMNT's website (depicted below), the top four ingredients are "Salt (Sodium Chloride), Citric Acid, Magnesium Malate, [and] Potassium Chloride." Like other flavors, the citrus salt flavor contains 1000mg of sodium, 200mg of potassium, and 60mg of magnesium. Therefore, maltodextrin is in fact (at least) the third most prominent ingredient in the citrus salt flavor as well.



---

[17] Ingredients List image for Citrus Salt flavor, Drink LMNT, *supra*, n.5.

51.     The maltodextrin present in the Products has a technical and functional effect because it acts as a flavor carrier in the finished product. There is no transformation of functionality.

52.     By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

53.     Plaintiffs and other consumers were injured by the foregoing deceptive advertising because they paid a premium for the Products based on the false perception that the Products did not contain any artificial ingredients or ingredients not listed in the ingredient list.

54.     Had Plaintiffs and other consumers known the Products were made with maltodextrin, a highly processed and synthetic ingredient that is not found in nature, they would have purchased a different product, or paid significantly less for the Products. In fact, Plaintiffs have stopped ingesting and purchasing LMNT products after learning of the inclusion of maltodextrin as an ingredient. As such, Plaintiffs and members of the putative Classes have been injured.

55.     As Defendant did not disclose that maltodextrin is contained in the Product initially, Plaintiffs did not discover the products contained maltodextrin until after it was publicly disclosed on October 20, 2024.

56.     Discovering that the Products contain maltodextrin or other ingredients that are not natural requires an investigation beyond that of the skills of the average consumer. That is why the reasonable consumer would not understand – nor are they expected to understand – that the Products contain ingredients that are not natural.

57.     Consumers rely on advertising and label representations and information in making purchasing decisions.

58.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiffs and the Class Members.

59.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled and advertised using the phrases "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients", and "Paleo-Keto friendly" over comparable products not so labeled and marketed.

60.     Consumers were in fact misled as a result of LMNT's misrepresentations. Since the use of maltodextrin was disclosed, many consumers have publicly communicated their displeasure online. For example, a 2024 post on Reddit titled *LMNT ingredient controversy* from user Easy-Hedgehog-9457 on the r/diabetes_t2 subreddit includes the following comments:

a.  Comment from MotherFL561 stating:

I'm pissed. I feel duped. I read every darn food label and make decisions whether to eat or not based off of the label. Now it makes sense. Now I see why my BG would be wonky after drinking. Wow. LMNT you lost me as a customer forever.[18]

b.  Comment from Geekbot_5000_ stating:

I heard about this about a month ago on Reddit and cut it (maltodextrin) out completely in my diet and my numbers are much better.[19]

c.  Comment from bbizznass, stating in part:

Very shady company I no longer trust them.[20]

61.  A 2024 Youtube video titled *I Tested Amazon's Top 5 Electrolytes* that mentions the use of maltodextrin in LMNT products includes the following comments:[21]

a.  Comment from @zjunegirl1862 stating:

Wow. I've been using LMNT. Definitely won't be anymore.

---

[18] u/MotherFL561, Reddit (r/diabetes_t2), *LMNT ingredient controversy* (Oct. 28, 2024, at 21:11 UTC), https://www.reddit.com/r/diabetes_t2/comments/1gbh98y/ comment/lu8qr3g/ (last visited Oct. 31, 2025).

[19] u/Geekbot_5000_, Reddit (r/diabetes_t2), *LMNT ingredient controversy* (Oct. 25, 2024, at 01:42 UTC), https://www.reddit.com/r/diabetes_t2/comments/1gbh98y/ comment/ltm5ql3/ (last visited Oct. 31, 2025).

[20] u/bbizznass, Reddit (r/diabetes_t2), *LMNT ingredient controversy* (Dec. 23, 2024, at 16:32 UTC), https://www.reddit.com/r/diabetes_t2/comments/1gbh98y/ comment/m3gg7lp/ (last visited Oct. 31, 2025).

[21] Dr. Sten Ekberg, *I Tested Amazon's Top 5 Electrolytes*, YouTube (Nov. 8, 2024), https://www.youtube.com/watch?v=JxNrWb2rLD4&lc=UgxA6wfRKG7J_ucUG MV4AaABAg (last visited Oct. 31, 2025).

b. Comment from @brickpharmer stating, in part:

Very timely in the wake of the LMNT debacle. When I found out about the maltedextrin in LMNT I was super angry. Less so because it was in there and more so because they went out of their way to disguise it.

c. Comment from @MareB22 stating, in part:

I have ordered LMNT several times and will never order from them again, and I'm going to throw out what I do have.

d. Comment from @LivingRetirement stating, in part:

I have been drinking LMNT, but will be switching as I was not aware of that non listed material.

e. Comment from @Knowledge-b6o stating:

I WILL NEVER BUY LMNT AGAIN!!!! TY DR E.

f. Comment from @LibertyLabrador33 stating, in part:

Thank you so much for addressing this topic. I've been using LMNT. Bye bye LMNT ….

62. A 2024 YouTube video titled *LMNT New Information & Lack of Transparency* that discusses LMNT's disclosure that maltodextrin is in its products includes the following comments:[22]

a. Comment from @tortiecat6459 that states:

---

[22] KetoSimple, *LMNT New Information & Lack of Transparency*, YouTube (Oct. 2, 2024), https://www.youtube.com/watch?v=4eTTBJ8hNsk (last visited Oct. 31, 2025).

Thank you for the enlightening information. I'm contacting LMNT to request a refund on the supply I bought. That's deceptive advertising to me regarding the hiding of Maltodextrin under "natural flavors."

b. Comment from @caterinadc5567 that states, in part:

It's disappointing that a product from people we should have been able to trust, turns out to have this kind of deceptive labelling.

c. Comment from @charlotteestess268 that states:

I think they should expect lawsuits and completely deserve it

d. Comment from @frankcoley1537 that states, in part:

Bro Im pissed all the money spent on this and to avoid this trash ingredient.

e. Comment from @texasgrannieof2 that states, in part:

My subscription is now being cancelled, unbelievable.

f. Comment from @winsomewife7112 that states:

No dodgy ingredients? Ok so they define dodgy differently than I do.

63. LMNT's own website also contains comments from several concerned "Verified Buyers," including:[23]

a. Review from Jacob K. stating, in part:

So many things I could say, didn't respond to another email I got when it said you guys respond to everything, mislabeled

---

[23] *LMNT Zero-Sugar Electrolytes*, Drink LMNT https://drinklmnt.com/products/lmnt-recharge-electrolyte-drink/ (last visited Oct. 31, 2025).

ingredients and ingredient totals (ie amount of maltodextrin), never let us know that your formula was off and had to go to different sources, I'm not sure you wanted to remind me to write a review.

b. Review from Richrd M. stating, in part:

I am not happy to learn of the ingredients list to include maltodextrin without being disclosed. I will not recommend this product to others or purchase it again. Some people are HIGHLY sensitive, even to minuscule amounts of certain compounds. I am one of those people, and I selected your product based on your false statements. Since starting use of your product my appetite has been uncontrollable, as if I was eating sugar again, and I didn't equate your product to that change until reading about your hiding of maltodextrin from the list of ingredients. Shame on you.

c. Review from Patricia A. stating, in part:

Product had ingredients I wasn't aware of. I let the company know I was unhappy. They emailed me immediately and apologized They asked if I wanted an exchange or a refund. I emailed back asking for a refund and they ghosted me. I tried 4 more times to contact them and they never got back to me. Waste of $125.

64.    Amazon's customer reviews from verified purchasers of LMNT's Variety Pack further provide the following reviews:[24]

a. Review from user Dougie Fresh stating, in part:

If you've not heard, in July of 2024, LMNT was forced to reveal that instead of 4mg of Maltodextrin, it has 400mg! This is maddening.

---

[24] *LMNT Zero Sugar Electrolytes - Variety Pack | Drink Mix | 12-Count*, Amazon. com, https://www.amazon.com/LMNT-Zero-Sugar-Electrolytes/dp/B084HQ4DYQ (last visited Oct. 30, 2025).

They hide it under the ingredient "natural flavors."

b.  Review from user Purinsu stating, in part:

This brand uses maltodextrin as a flavor carrier but conveniently doesn't list it as an ingredient—because they don't technically consider it one.

Yet they boldly claim "No sugar," "No dodgy ingredients," and "Keto/Paleo-friendly." That's simply not true.

I've been buying their products since last year, trusting their labels—because I manage a chronic illness where sugar is strictly off-limits. Maltodextrin is a highly processed carbohydrate that the body rapidly converts into glucose, spiking blood sugar even faster than regular sugar.

I'm furious. This is not just misleading—it's a complete betrayal of trust. People like me rely on transparency. This brand failed. Badly.

c.  Review from user Jessa stating:

I have been avoiding starch and sugars for over a year and a half and have been extremely strict on it for health reasons only using dr bergs electrolytes or making my own for health reasons. I just found out that LMNT has maltodextrin in it!! It is not on the ingredient list. I just bought this and have been drinking it and been feeling quit unwell. I did not contribute it to the drink because I did not have starch or sugar. A year and a half of hard work avoiding eating starch and sugars all ruined by lying advertisement!! The only reason this tastes good is because it has maltodextrin in it. Every disappointed.

d.  Review from user Julie Camilla, stating:

Don't buy this if you're allergic to maltodextrin like I am. They disguised this ingredient as "natural flavor" which ended up being a

27

high percentage in maltodextrin. They market it as "No dodgy ingredients," but clearly, they lied.

Besides causing a blood glucose spike, maltodextrin may cause a rash or skin irritation, asthma, cramping, or difficulty breathing.

## STATUTORY NOTICE OF CLAIMS

65.     Plaintiffs took reasonable steps to notify LMNT of its unlawful conduct and to request remedial measures by sending notice letter to LMNT's headquarters in Billings, Montana (1925 Grand Avenue, Suite 129 Billings, Montana 59102) and also to their offices in Naples, Florida (1150 Central Avenue Naples, Florida 34102). These notices were received by LMNT in Montana on May 23, 2025, and in Florida on May 27, 2025.

66.     The notices explained that the Products were falsely advertised, mislabeled, and sold in violation of "numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9)," as well as "numerous other state consumer protection and warranty laws, including but not limited to the implied and express warranty laws of California, Arkansas, and Montana." The notices further stated that Plaintiffs intended to bring an action "for violations of the CLRA and state warranty law on behalf of themselves and all similarly situated consumers nationwide" unless LMNT:

(1) ceases and desists from further sales of falsely advertised and mislabeled Products, (2) issues an immediate voluntary recall of the

falsely advertised and mislabeled Products; (3) makes full restitution to all purchasers of the falsely advertised and mislabeled Products of all purchase money obtained from sales thereof; and (4) compensates all purchasers for the costs they have incurred purchasing the falsely advertised and mislabeled Products.

67.    The notice letters requested that Defendant comply with these demands within 30 days from receipt thereof. The notice letters also invited LMNT to further discuss Plaintiffs' allegations and a potential resolution. However, LMNT did not respond to the notices or the demands that they contained.

## CLASS ACTION ALLEGATIONS

68.    There are hundreds of thousands of Class members across the United States who have purchased LMNT's Products.

69.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs brings this suit on behalf of themselves and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

**All persons in the United States who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

70.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Scolaro brings this suit on behalf of herself and a California-statewide class (the "California Class" or "Subclass") defined as follows:

**All persons who reside in California who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

29

71.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Vaughn brings this suit on behalf of herself and an Arkansas-statewide class (the "Arkansas Class" or "Arkansas Subclass") defined as follows:

> **All persons who reside in Arkansas who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

72.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff Jarosky brings this suit on behalf of himself and an Montana-statewide class (the "Montana Class" or "Montana Subclass") defined as follows:

> **All persons who reside in Montana who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale.**

73.    Plaintiffs specifically exclude LMNT, its employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

74.    The definitions of the Class and Subclasses are unambiguous, and Plaintiffs are members of the Class and Subclasses they seek to represent.

75.    Plaintiffs reserve the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

30

76.    The Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Discovery to date has shown that the Class numbers in the hundreds of thousands.

77.    The Subclasses are so numerous and geographically dispersed that joining all the members would be impracticable. The exact number of members in the Subclasses is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe the Subclasses each consist of at least 100 members.

78.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased an LMNT Product that was sold with misleading labeling and suffered a pecuniary loss as a result of the purchase. Plaintiffs' claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Classes. All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

31

79.    Plaintiffs' claims are typical of the claims of the Subclasses because Plaintiffs purchased LMNT's Products sold with misleading advertising and labeling and suffered a pecuniary loss as a result of the purchase. The Subclass Plaintiffs' claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiffs and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiffs, suffered the same type of injury and possess the same interests in pursuing this case as do Plaintiffs, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

80.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and the Subclasses and have retained counsel competent and experienced in class action litigation.

81.    LMNT has acted or refused to act on grounds generally applicable to the Class and the Subclasses, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclasses as a whole. Specifically, LMNT continues to misrepresent ingredients and makeup of its Products, continues to use them, making the harm to purchasers ongoing, including Plaintiffs who intend to be in the market to purchase other electrolyte beverages in

the future. Because Defendant continues to use and promote its misrepresentations in the marketing and sale of its Products, Plaintiffs, members of the Class and the Subclasses, and future purchasers will be similarly misled about the Products thereby causing them to pay a price premium for inaccurate representations.

82.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

a.     The nature of LMNT's promotion of its Products' representations;

b.     Whether LMNT misrepresented the ingredients and fillers in its Products;

c.     Whether LMNT knew or should have known its claims regarding the advertising, packaging and its ingredients were false and/or misleading;

d.     Whether LMNT's representations were material to consumers and the market;

e.     Whether LMNT placed representations on its advertisements and packaging;

33

f.      Whether LMNT provided point of sale materials to retailers for use in promoting LMNT's Products and whether those materials included misleading references to ingredients;

g.      Whether LMNT's misleading statements constituted contractual promises or warranties on the Products;

h.      Whether LMNT's misleading representations caused it to receive money that it would not have received absent those representations;

i.      Whether LMNT's actions breached the duties it owed Plaintiffs and the Class under express warranties for the Products;

j.      Whether the LMNT's actions breached the duties it owed Plaintiffs and the Class under its implied warranties regarding the Products;

k.      Whether Plaintiffs and the Class paid more for the Products than they would have paid absent LMNT's misleading representations;

l.      Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and

m.      Whether the Court should enjoin LMNT from continuing to misrepresent the Products' ingredients.

83.    Resolution of each of these issues will turn upon evidence common to all Class members.

84.    Resolution of issues common to all Class members will predominate over individual issues.

85.    The issues common to the Class and the nature of the common relief creates a cohesive class for injunctive relief.

86.    Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

   a.    It will avoid a multiplicity of suits and consequent burden on the courts and LMNT;

   b.    It would be virtually impossible for all members of the Class and/or Subclasses to intervene as parties-plaintiffs in this action;

   c.    It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

   d.    It will provide court oversight of the claims process, once LMNT's liability is adjudicated;

   e.    It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

f.     It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate such claims against a large corporation, LMNT.

87.     Plaintiffs and the proposed Class and Subclasses satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

88.     Plaintiffs are not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

**COUNT I**
**Negligent Misrepresentation**
**(on behalf of the Nationwide Class / Asserted in the Alternative on behalf of the Subclasses)**

89.     Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

90.     In the course of business, LMNT misrepresented that the Products do not contain artificial ingredients that they indeed do contain. LMNT had a duty to disclose the truthful makeup of its Products rather than the misrepresented information.

91.     LMNT supplied the Plaintiffs and Class members false and misleading information in which a reasonable consumer would have used as guidance in evaluating the Products.

36

92.     At the time Defendant made these misrepresentations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

93.     LMNT negligently misrepresented and/or at a minimum, negligently omitted material facts concerning the Products.

94.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class members to purchase the Products.

95.     Plaintiffs and Class members would not have purchased the Products or would have paid considerably less, if the true facts concerning the makeup of the Products and the ingredients included had been known.

96.     LMNT's deceitful actions have caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT II
### Unjust Enrichment/Restitution
### (on behalf of the Nationwide Class / Asserted in the Alternative on behalf of the Subclasses)

97.     Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

98.     Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

99.    Defendant received a benefit from Plaintiffs and the members of the Nationwide Class and State Subclass in the form of payment for the Products.

100.    Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in the unlawful, unjust, and wrongful acts, omissions, and practices described in this Complaint.

101.    The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned and came at the expense of Plaintiffs and the other members of the Nationwide Class and State Subclass.

102.    Defendant knew or should have known that the Products can physically harm the consumers that purchased the Products, but nonetheless continues to sell the Products without warning.

103.    Defendant's conduct is unjust, inequitable, and wrongful, but systematically engage in this conduct anyway in order to gain unfair advantages and reap unearned financial benefits.

104.    There is no justification for Defendant's continued silence as customers purchased the Products.

105.    It is therefore against equity and good conscience to permit Defendant to retain the proceeds from its sales of the improperly advertised and labeled Products.

106.   Plaintiffs and the Class are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## COUNT III
**Violation Of California's False Advertising Law ("FAL")**
**California Civil Code §§ 17500, et seq.**
**(on behalf of the California Subclass)**

107.   Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

108.   Plaintiff Scolaro brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

109.   The FAL makes it "unlawful for any person . . . with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . or cause to be made or disseminated from this state before the public in any state . . . any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ." Cal. Bus. & Prof. Code § 17500.

110.   Defendant violated the FAL by publicly disseminating misleading and false advertisements for the Products through the labeling of the Products as

containing "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients," when the Products contained maltodextrin.

111. Defendant's false and misleading representation was made in order to increase sales of the Products.

112. Plaintiff Scolaro and members of the California Subclass would not have bought the Products, or would have paid considerably less for them, had they known that the representations were false and misleading, and that the Products were made with maltodextrin—an artificial flavor and artificial ingredient.

113. Plaintiff Scolaro and members of the California Subclass seek an order requiring Defendant to: (a) make full restitution for all monies wrongfully obtained; and (b) disgorge all ill-gotten revenues and/or profits. Plaintiff Scolaro also seeks all other available relief as pleaded in this Complaint.

## <u>COUNT IV</u>
**Violation Of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200, et seq.**
**(on behalf of the California Subclass)**

114. Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

115. Plaintiff Scolaro brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

116. Plaintiff Scolaro and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

117. The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof. Code § 17200.

118. In the course of conducting business, Defendant engaged in "unlawful" business practices by violating 21 C.F.R. § 101.18(b), Cal. Civ. Code § 1770, Cal. Bus. & Prof. Code § 17500, and the other laws referenced herein.

119. As a result of Defendant's unlawful business acts and practices, Defendant has and continue to unlawfully obtain money from Plaintiff Scolaro and members of the California Classes.

120. Defendant's foregoing business practices are also "unfair" under the UCL, which states that unfair acts are acts where the reasons, justifications and motivations of Defendant are outweighed by the harm to Plaintiff Scolaro and other California consumers.

121. A business practice is also considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct alleged causes an injury which is not outweighed by any benefits to other consumers or to competition, and that the injury is of the type that the consumer could not have avoided. Defendant's conduct is "unfair" pursuant to the UCL under each of the three tests described in these paragraphs.

122. Defendant's behavior constitutes unfair business practices under California law.

123. Defendant's retention of Plaintiff Scolaro and California Class member's payments for the Products outweighs the economic harm that said retention imposes on consumers. The only party that benefits is Defendant. There is no benefit to deceiving consumers regarding the ingredients in the Products they are consuming, particularly when Defendant is charging a premium for this false perception. Defendant's sale of the Products with the "All Natural Ingredients", "No Artificial Ingredients", "No Dodgy Ingredients," statements discussed herein are immoral, unethical, oppressive, and substantially injures consumers.

124. As Defendant continues to unfairly retain Plaintiff Scolaro's and members of the California Subclass's payments for the Products, this conduct continues to be unfair under California law. This is exactly the type of unscrupulous and inexcusable business practice that the UCL was enacted to address.

125. Defendant's representations are also "fraudulent" under the UCL because they have the effect of deceiving consumers into believing that the Products are comprised of only certain ingredients when they are not.

126. Defendant knew, or should have known, its material misrepresentation would be likely to deceive and harm the consuming public and result in consumers making payments to Defendant under the false impression about the Products.

127.    As a result of Defendant's conduct, Plaintiff Scolaro and members of the California Subclass have suffered injury-in-fact by paying more for the Products than they otherwise would have. Plaintiff Scolaro requests that the Court issue sufficient equitable relief to restore her and members of the Classes to the position they would have been had Defendant not engaged in unfair business practices.

128.    Defendant also violated the unlawful prong of the UCL by falsely advertising and labeling the LMNT Products in violation of the Sherman Food, Drug, and Cosmetic Act, including (but not limited to) Cal. Health & Safety Code Ann. § 110390, Cal. Health & Safety Code Ann. § 110395, and Cal. Health & Safety Code Ann. § 110398.

129.    Plaintiff Scolaro and members of the California Subclass seek an order requiring Defendant to: (a) make full restitution for all monies wrongfully obtained; and (b) disgorge all ill-gotten revenues and/or profits. Plaintiff Scolaro also seeks all other available relief as pleaded in this Complaint.

**COUNT V**
**Violations of California Consumer Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, et seq.**
**(on behalf of the California Class)**

130.    Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

131.    Defendants are each a "person" as defined by the CLRA. Cal. Civ. Code § 1761(c).

43

132. Plaintiffs and Class Members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased the Products.

133. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

134. Defendant engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as fully alleged above, by advertising, marketing, distributing and selling mislabeled and misbranded Defendant's Products to Plaintiffs and other members of the Class who purchased Defendant's Products in California, Defendant engaged in, and continue to engage in, unlawful deceptive and unconscionable trade practices. This conduct violated, *inter alia*, Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

135. Defendant's misleading marketing, advertising, packaging and labeling of Defendant's Products were likely to deceive reasonable consumers.

136. The information Defendant affirmatively misrepresented, concealed and/or failed to disclose to Plaintiffs and Class Members concerning the Products is material because reasonable consumers are more likely to purchase or pay a premium for products that they believe or natural.

137. Plaintiffs and Class Members would have paid less for their Products, or would not have made the purchases altogether, had they been aware that they contained maltodextrin.

138. Defendant had exclusive knowledge of the material facts not known to Plaintiffs and Class Members, since only Defendant had access to the true composition of the Products. Defendants actively concealed and suppressed the material facts form Plaintiffs and Class Members by providing misleading labeling regarding natural ingredients.

139. Plaintiffs and Class Members justifiably acted or relied to their detriment upon the misrepresentations, concealment, and/or non-disclosure of material facts as evidenced by their purchases of the Products. Had Defendant disclosed the material fact that the Products contained maltodextrin, Plaintiffs and Class Members would have behaved differently by not buying the Products and/or paying less for the Products.

140. Defendant's misrepresentations and omissions of material facts directly and proximately cause Plaintiffs and Class Members injuries in that Plaintiffs and Class Members did not receive the benefit of their bargain and paid a price premium for the Products based on the false understanding that the Products were "all natural."

141.   Defendant knew, should have known, or was reckless in not knowing that their Products contained maltodextrin, and that reasonable consumers would therefore not consider the Products "all natural" or lacking artificial ingredients.

142.   Plaintiffs and Class Members are reasonable consumers who expected that the Products they purchased were "all natural."

143.   Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, equitable relief, and an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e). Plaintiffs and the Class Members seek any and all damages available under law resulting from Defendants' false and misleading representations.

## COUNT VI
### Violation of the Arkansas Deceptive Trade Practices Act
### Arkansas Code § 4-88-107
### (on behalf of the Arkansas Class)

144.   Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

145.   Arkansas' Deceptive Trade Practices Act, AR Code §4-88-107(a) ("ADTPA"), defines "[d]eceptive and unconscionable trade practices made unlawful" to include "[k]nowingly making a false representation as to the characteristics [or] ingredients . . . of goods . . .," "[e]ngaging in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or

trade" or "[k]nowingly facilitating, assisting, intermediating, or in any way aiding the operation or continuance of an act or practice that is in violation" of the act. AR Code §4-88-107(a)(1), (10), and (12).

146. Defendant's conduct constitutes unlawful deceptive and unconscionable trade practices. Defendant's conduct was consumer-oriented and this conduct had broad impact on consumers at large. Defendant engaged in false, misleading and unlawful advertising, marketing and labeling of Defendant's Products. Defendant's manufacturing, distribution and sale of Defendant's Products were similarly unlawful.

147. Defendant unlawfully sold Defendant's Products in Arkansas during the Class Period.

148. As fully alleged above, by advertising, marketing, distributing and selling mislabeled and misbranded Defendant's Products to Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas, Defendant engaged in, and continue to engage in, unlawful deceptive and unconscionable trade practices.

149. Defendant's misleading marketing, advertising, packaging and labeling of Defendant's Products were likely to deceive reasonable consumers.

150. Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were deceived.

151.  Defendant has engaged in unlawful deceptive and unconscionable trade practices.

152.  Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were injured by Defendant's unlawful deceptive and unconscionable trade practices.

153.  Defendant's fraud and deception caused Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas to purchase Defendant's Products that they would otherwise not have purchased or would have paid less for had Plaintiffs known the true nature of these products.

154.  Plaintiffs and other members of the Class who purchased Defendant's Products in Arkansas were injured as a result of Defendant's unlawful deceptive and unconscionable trade practices.

155.  In violation of the labeling laws of the state of Arkansas and A.C.A. §§ 4-88-107 and 4-88-108, Defendant sold to Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas, a product that was not capable of being sold legally with deceptive labeling, and which has no economic value. Defendant's violation of A.C.A. §§ 4-88-107 and 4-88-108 remains ongoing.

156.  As a direct and proximate cause of Defendant violation of A.C.A. §§ 4-88-107 and 4- 88-108, Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas were injured when they paid for these

mislabeled products. Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas have been damaged in an amount to be determined at trial.

157. As a result of Defendant's unlawful deceptive and unconscionable trade practices, Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas, pursuant to A.C.A. § 4-88-113 and A.C.A. §§ 4-88-107 and 4-88-108, are entitled to damages and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiffs and the members of the Class who purchased Defendant's Products in Arkansas any money paid for Defendant's Products.

## <u>COUNT VII</u>
**Violation of the Montana Unfair Trade Practices & Consumer Protection Act**
**Mont. Code Ann. § 30-14-101, et seq.**
**(on behalf of the Montana Class)**

158. Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

159. The Montana Unfair Trade Practices and Consumer Protection Act ("MCPA") prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Mont. Code Ann. § 30-14-103.

160. Plaintiffs and members of the Montana Subclass are consumers under the MCPA because they purchased LMNT Products primarily for personal, family, or household purposes. *See* Mont. Code Ann. § 30-14-102(1).

49

161. By the conduct described in detail above and incorporated herein, Defendant engaged in unfair and deceptive acts and practices in the conduct of trade and commerce related to the advertising and labeling of the Products.

162. Defendant's acts and practices directly and indirectly affected the people of Montana.

163. Defendant's conduct was deceptive because it was likely to mislead consumers.

164. Defendant's conduct was unfair because it offends established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

165. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and members of the Montana Subclass have suffered ascertainable loss and actual damages. Plaintiffs and members of the Montana Subclass would not have purchased the LMNT Products, or would have paid less for them, had they known that the LMNT products contained artificial ingredients.

## COUNT VIII
### Breach of Implied Warranty
### (on behalf of Plaintiffs and the Nationwide Class)

166. Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

167. The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods sale.

168. The purpose of these warranties is to protect consumers, as consumers are the intended beneficiaries of those warranties and the representations made by LMNT produce sales, create consumer demand, and generate purchases.

169. The Products are consumer goods.

170. LMNT breached these implied contractual provisions because the Products are not made of the natural ingredients that LMNT promised.

171. The Products are not fit for their ordinary purpose of providing electrolytes free of "artificial" and "dodgy" ingredients because the Products contain maltodextrin.

172. Defendant either sold the Products directly to consumers or distributed the Products to a store in order to sell the Products directly to consumers. Defendant's warranties were designed for and intended to benefit the consumer only. At all times, Plaintiffs and Class Members were the Defendant's intended beneficiaries.

173. Defendant impliedly warranted that the Products were of merchantable quality and fit for their intended consumption.

174. Defendant's sale of the Products containing artificial fillers and ingredients caused the implied warranty to fail in its essential purpose.

175. Plaintiffs and Class Members did not receive the full benefit of their bargain with LMNT because the products contained maltodextrin.

176. Plaintiffs and Class Members would not have purchased, or would have paid less for, the Products had they known that they contained artificial maltodextrin.

177. Plaintiffs and Class Members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the lost benefit of their bargain and/or the price premium that they paid.

## COUNT IX
### Breach of Implied Warranty
### (on behalf of Plaintiffs and the Subclasses)

178. Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

179. This claim is brought in the alternative to Plaintiffs' claim for breach of implied warranty on behalf of a nationwide class.

180. LMNT is a merchant with respect to the Products. It regularly sells the Products to consumers like Plaintiffs and the Subclass members.

181. Arkansas, California, and Montana have substantially similar statutes setting forth causes of action for breach of implied warranty. *See* Cal. Com. Code §

2314; Cal. Com. Code § 2315; Mont. Code Ann. § 30-2-314; Mont. Code Ann. § 30-2-315; Ark. Code Ann. § 4-2-314; Ark. Code Ann. § 4-2-315.

182. Under Arkansas, California, and Montana law, goods must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, be of fair average quality within the description; (c) be fit for the ordinary purposes for which such goods are used; (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (e) be adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any. *See* Mont. Code Ann. § 30-2-314(2); Ark. Code Ann. §§ 4-2-314(2); Cal. Com. Code § 2314(2). LMNT violated subparts (a), (b), (c), (e), and (f) of these statutes by labeling and advertising the Products as "all natural," free from artificial ingredients, and "Paleo-Keto friendly" despite containing maltodextrin and then selling them to Plaintiffs and Subclass Members.

183. LMNT also violated Arkansas, California, and Montana law because it knew or had reason to know at the time of contracting with Plaintiffs and Class Members that they were relying on LMNT's skill or judgment to furnish "all natural" goods, and that Plaintiffs and Class Members would not consider the goods they received to be "all natural" and free from artificial ingredients or Paleo-

53

Keto friendly. Ark. Code Ann. §§ 4-2-315; Mont. Code Ann. § 30-2-315; Cal. Com. Code § 2315.

184. Plaintiffs and Subclass Members did not receive the full benefit of their bargain with LMNT because the products contained maltodextrin.

185. Plaintiffs and Subclass Members would not have purchased, or would have paid less for, the Products had they known that they contained artificial maltodextrin.

186. Plaintiffs and Subclass Members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the lost benefit of their bargain and/or the price premium that they paid.

**COUNT X**
**Breach of Express Warranty**
**Cal. Com. Code § 2313(1)**
**(on behalf of the California Subclass)**

187. Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

188. Through the Product's label and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were part of the basis of the bargain, in that Plaintiffs and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

189. The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiffs and the Class because they

54

concerned the makeup of the Product regarding the lack of artificial fillers and improper ingredients.

190.    These representations of "All Natural Ingredients," "No Artificial Ingredients," "No Dodgy Ingredients," and "Paleo-Keto friendly" had an influence on consumers' decisions in purchasing the Product.

191.    Defendant made the above representations to induce Plaintiffs and the members of Class to purchase the Product. Plaintiffs and the Class members relied on the representations when purchasing Defendant's product.

192.    Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits.

193.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiffs and Class members paid for the Product.

<u>**COUNT XI**</u>
**Breach of Express Warranty**
**Mont. Code Ann. § 30-2-313**
**(on behalf of Plaintiff and the Montana Subclass)**

194.    Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

195.    Under Mont. Code Ann. § 30-2-313, an express warranty is created by (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise or (b) Any description of

the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

196.    LMNT created an express warranty under Mont. Code Ann. § 30-2-313 when it advertised and labeled the Products as "all natural," "Paleo-Keto friendly," and not containing artificial ingredients.

197.    Plaintiffs and Class Members would not have purchased the Products had they known that they contained maltodextrin.

198.    Plaintiffs and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the lost benefit of their bargain and/or the price premium that they paid.

## COUNT XII
**Breach of Express Warranty**
**Ark. Code Ann. § 4-2-313**
**(on behalf of Plaintiff and the Arkansas Subclass)**

199.    Plaintiffs restate and incorporate paragraphs 1-88 of the Complaint as though fully pled herein.

200.    Under Ark. Code Ann. § 4-2-313, an express warranty is created by (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise or (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

56

201.   LMNT created an express warranty under Ark. Code Ann. § 4-2-313 when it advertised and labeled the Products as "all natural," "Paleo-Keto friendly," and as not containing artificial ingredients.

202.   Plaintiffs and Class Members would not have purchased the Products had they known that they contained maltodextrin.

203.   Plaintiffs and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the lost benefit of their bargain and/or the price premium that they paid.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

1. Certify the proposed Class and Subclass and appoint Plaintiffs and their legal counsel to represent the Class and Subclass;

2. Find in favor of Plaintiffs, the Class, and the Subclass on all counts asserted herein;

3. Declare that LMNT's conduct violated the statutes referenced herein;

4. Award Damages, including compensatory, exemplary, and statutory to Plaintiffs, the Class, and the Subclass in an amount to be determined at trial;

57

5.  Grant restitution to Plaintiffs, the Class, and the Subclass and require LMNT to disgorge its ill-gotten gains;

6.  Award Plaintiffs, the Class, and the Subclasses punitive damages in an amount to be determined at trial;

7.  Award Plaintiffs, the Class, and the Subclasses reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8.  Enjoin LMNT from future misrepresentations regarding the Products;

9.  Declare the parties' rights and obligations under the warranties applicable to the Products' sales and under the law of the relevant state;

10. Award Plaintiffs, the Class, and the Subclasses pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

11. Order any such other and further relief the Court deems just and equitable.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated this 31st day of October, 2025.

Respectfully submitted,

/s/ John Heenan
John Heenan
**HEENAN & COOK, PLLC**
1631 Zimmerman Trail

58

Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
Email: john@lawmontana.com
Attorney for Plaintiffs

*/s/ Terence R. Coates*
Terence R. Coates (*pro hac vice)*
Jonathan T. Deters *(pro hac vice)*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*
*jdeters@msdlegal.com*
*dgould@msdlegal.com*

*Counsel for Plaintiff and the Putative Class*

* Motion to appear *pro hac vice* pending

59

## CERTIFICATE OF SERVICE

I certify that on October 31, 2025, I served the foregoing pleading upon counsel of record for all parties by filing it with the Court's electronic-filing (ECF) system, in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Terence R. Coates*
Terence R. Coates (*pro hac vice)*
