**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

LISA VAUGHN, BARBARA SCOLARO, JORDAN JAROSKY, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

DRINK LMNT, INC., dba LMNT,

Defendant.

CV 25-52-BU-WWM

ORDER GRANTING IN PART AND DENYING MOTION TO DISMISS

Before the Court is Defendant Drink LMNT, Inc.'s ("LMNT") Motion to Dismiss ("Motion") (Doc. 40), filed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs Lisa Vaughn, Barbara Scolaro, and Jordan Jarosky (collectively "Plaintiffs") filed a response on January 29, 2026. (Doc. 47). LMNT replied on March 2nd. (Doc. 50). The Court held oral arguments on the motion on May 28th.[1]

LMNT also asked the Court to take judicial notice of various versions of its webpages and packaging.[2] (Docs. 42 and 43). Plaintiffs stipulated to a limited

[1] LMNT filed a Notice of Supplemental Authority on August 17th, and Plaintiffs filed a response on September 1st. (Docs. 58 and 61, respectively).

[2] Specifically, LMNT sought judicial notice of: a blog post entitled, "What's the Deal

admission of Exhibit A: a blog post entitled, "What's the Deal with Natural Flavors." (Doc. 46 at 4-5). The Court took judicial notice of Exhibit A for the limited purposes to which the Plaintiff stipulated. However, following its review of the legal issues, very little of the information judicially noticed in Exhibit A is material to the analysis because relevant portions were already utilized in the Amended Complaint. The Court's rationale for denying the remaining requests is described in a separate order entered today.

For the following reasons, the Court grants LMNT's Motion with respect to Count II, the request for injunctive relief, and Plaintiffs' request for equitable remedies, but denies the Motion as to the remainder.

## I. Factual Background

LMNT manufactures, markets, and sells electrolyte drink mixes in a variety of flavors across the United States. (Doc. 30 at 2 and 7). On October 31, 2025, Plaintiffs filed an Amended Class Action ("Amended Complaint") against LMNT on behalf of themselves and similarly-situated purchasers of LMNT's flavored electrolyte drink mix ("Products"). *Id.* The Amended Complaint alleges that LMNT's use of phrases, such as "All Natural Ingredients," "No Artificial Ingredients," "No Dodgy Ingredients," "Vegan Friendly," and "Paleo-Keto

with Natural Flavors" referenced in the Amended Complaint; a prior version of the same blog post; LMNT's explanation of its "no-questions asked refund policy;" LMNT's homepage on January 4, 2023; and, an exemplar full image label of its full product line. (Doc. 42).

Friendly," is "false and misleading because all of the Products contain significant amounts of maltodextrin, a highly processed ingredient not found in nature." *Id.* at 2. The maltodextrin "functions in the finished product as a flavor carrier" and is not disclosed as an ingredient. *Id.*

Plaintiff Lisa Vaughn ("Ms. Vaughn") is a resident of Gassville, Arkansas, and has spent at least $1,900 on LMNT's Products since August 2021, purchasing the Products directly from LMNT's website. *Id.* at 5. Plaintiff Barbara Scolaro ("Ms. Scolaro") is a resident of Los Angeles, California, and has purchased LMNT's Products on multiple occasions both from LMNT's website and Amazon. *Id.* at 6. Plaintiff Jarod Jarosky ("Mr. Jarosky") is a resident of Bozeman, Montana, and has spent at least $700.00 on LMNT's Products since March 2022. *Id.* at 6-7. Each Plaintiff maintains they "would not have purchased this product, or would have paid less for it, had [they] known" that the Products contained maltodextrin. *Id.* at 5-7.

Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs brought this suit on behalf of themselves and a nationwide class defined as: "All persons in the United States who purchased an LMNT Product, during the maximum period of time permitted by law, primarily for personal, family, or household consumption, and not for resale." *Id.* at 29. Additionally, Ms. Scolaro brought suit on behalf of a California-statewide class, Ms. Vaughn on behalf of an

Arkansas-statewide class, and Mr. Jarosky on behalf of a Montana-statewide class. *Id.* at 29-30.

The Amended Complaint contains twelve counts: (1) negligent misrepresentation; (2) unjust enrichment and restitution; (3) violation of the California False Advertising Law, California Civil Code §§ 17500, et seq.; (4) violation of the California Unfair Competition Law, California Business & Professions Code § 17200, et seq.; (5) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; (6) violation of the Arkansas Deceptive Trade Practices Act, Arkansas Code § 4-88-107; (7) violation of the Montana Unfair Trade Practices & Consumer Protection Act, Montana Code Annotated § 30-14-101, et seq.; (8) breach of the implied warranty on behalf of Plaintiffs and the nationwide class; (9) breach of the implied warranty on behalf of Plaintiffs and the subclasses; (10) breach of the express warranty, California Commercial Code § 2313(a); (11) breach of the express warranty, Montana Code Annotated § 30-2-313; and (12) breach of the express warranty, Arkansas Code Annotated § 4-2-313. *Id.* at 36-57. Plaintiffs' claims can be generally summarized as alleging that they were misled into buying or paying a higher price for LMNT's Products by the representations that the Products were free from artificial ingredients. *Id.* at 2-3.

On December 15, 2025, LMNT filed a motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 40).

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court engages in a two-step inquiry when evaluating a motion to dismiss. First, the Court accepts as true the facts that are properly pleaded in a complaint, *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012), as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Court will construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2005). However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Likewise, the Court does not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Second, the Court determines whether the well-pleaded factual allegations are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court is required to "draw on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

In considering a motion to dismiss under Rule 12(b)(1), the court determines whether the jurisdictional challenge is "facial" or "factual." *Falfio v. Orlansky-Wax, LLC*, 2022 WL 3083323, at *1 (9th Cir.) (unpublished). A facial attack challenges solely the allegations of the complaint, while a factual attack requires extrinsic evidence to dispute the facts that invoke federal jurisdiction. *Id.* LMNT's motion is a facial attack because it argues that the allegations themselves invalidate Plaintiffs' standing for injunctive relief. (Doc. 41 at 33).

## III. Discussion

LMNT argues that the Court should dismiss Plaintiffs' Amended Complaint for three reasons: (1) Plaintiffs' claims are expressly preempted by federal law; (2) Plaintiffs fail to plausibly allege that a reasonable consumer would be misled by LMNT's representations;[3] and (3) Plaintiffs failed to plead essential elements of their claims.

The Court will first take up the issue of federal preemption before addressing each category of state law claim.

### a. Federal Preemption

In 1990, Congress passed the Federal Nutrition Labeling and Education Act ("NLEA"), an amendment to the Federal Food, Drug, Cosmetic Act ("FDCA"). NLEA "expressly prohibit[s] states from 'directly or indirectly' establishing 'any requirement for [the] nutrition labeling of food that is not identical' to federal requirements." *Pardini v. Unilever U.S. Inc.*, 65 F.4th 1081, 1083-84 (9th Cir. 2023) (alterations in original) (quoting 21 U.S.C. § 343-1(a)(4)). The phrase "not identical" means requirements that directly or indirectly impose obligations that either "are not imposed by" or "differ from those specifically imposed by or contained in the applicable provision [or regulation]." 21 C.F.R. § 100.1(c)(4). "It

[3] The Court will address the Rule 12(b)(1) components of LMNT's argument in conjunction with the plausibility arguments.

is well established that the FDCA's preemption provision can preempt state law statutory and common law causes of action . . . to the extent those claims would directly or indirectly impose nutrition label requirements different than those prescribed by federal law." *Pardini*, 65 F.4th at 1084-85.

Federal regulations permit "incidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food" to be included under the term "natural flavor." 21 C.F.R. §§ 101.100(a)(3); 101.22(h)(2) (stating that "natural flavor" may be in the statement of ingredients without listing incidental additives that meet the requirements of § 101.100(a)(3)). The regulation further defines incidental additives as either: (1) substances that have no technical or functional effect but are present in a food because they are an ingredient of another food or (2) processing aids that are "added to a food for their technical or functional effect in the processing but are present in the finished food at insignificant levels and do not have any technical or functional effect in that food." *Id.* at § 101.100(a)(3)(i), (ii)(c). If an incidental additive meets these requirements, it does not need to be separately declared in the statement of ingredients.

In its motion to dismiss, LMNT states that maltodextrin is not an "ingredient," but an incidental additive properly included under "natural flavoring." (Doc. 41 at 19). LMNT argues that the maltodextrin is used for its

"technical and functional effect in the processing but [] present in the finished food at insignificant levels and do not have any technical or functional effect" in its Products -- qualifying as an incidental additive. *Id.* at 18 (citing 21 C.F.R. §§ 101.22(h)(2), 101.100(a)(3)(ii)(c)). Thus, LMNT asserts that federal regulations do not require it to identify maltodextrin specifically. *Id.* LMNT argues that because Plaintiffs premise their claims on the theory that maltodextrin must be disclosed, the Amended Complaint is expressly preempted by federal law and should be dismissed in its entirety. *Id.* at 11 and 19.

Plaintiffs counter that their claims are not preempted by federal law; instead, they contend that LMNT's labeling violates both state and federal law. (Doc. 47 at 18). Plaintiffs assert that maltodextrin is not an incidental additive because "it is present in the finished Products at significant levels,"[4] and has a "technical or functional effect in the finished Product." *Id.* at 18-19. Nonetheless, Plaintiffs contend that whether maltodextrin is present in the finished Products at a

[4] In the Amended Complaint, Plaintiffs assert that maltodextrin is "at least the third most prominent ingredient" because of LMNT's blog post disclosing each drink mix contains about 300 milligrams of maltodextrin. (Doc. 30 at 18-19). Plaintiffs comment in their response to LMNT's motion to dismiss that "there are more milligrams of maltodextrin in the Products than electrolytes that are prominently featured on the labeling like magnesium and potassium." (Doc. 47 at 19). However, Plaintiffs conclude that "the significance of maltodextrin in the finished Products does not depend solely on weight—instead, courts should assess a reasonable consumer's expectations." *Id.* In its reply, LMNT states that the assertion that maltodextrin is the third most prominent ingredient is "demonstrably false on the face of the [Amended Complaint]." (Doc. 50 at 8). It points out that maltodextrin is only a component of the natural flavoring ingredient, which itself is not the third most prominent ingredient. *Id.* Maltodextrin alone is not the third most prominent ingredient.

significant level is a question of fact, not suitable for disposition in a motion to dismiss. *Id.* at 19.

Plaintiffs additionally argue that omitting maltodextrin from the ingredients list is not the only basis for their claims. *Id.* at 20. They contend that LMNT is liable for mislabeling and advertising the Products as containing all natural ingredients, no artificial ingredients, and as being paleo-keto and vegan friendly. *Id.* Dismissing all of Plaintiffs' claims on preemption grounds is opposed because the exclusion of maltodextrin from the ingredients list is not the only basis for their claims.

The Court agrees with both of Plaintiffs' arguments. First, whether or not 300 milligrams of maltodextrin is "significant" in LMNT's final Products is a fact question that depends largely on the type of product, levels of other ingredients, and overall mass of the Products. There is no binding or persuasive authority that draws a bright-line test to determine whether a substance is present in a finished product at a significant level such that it no longer qualifies as an incidental additive. The Amended Complaint plausibly alleges that the maltodextrin is significant, in accordance with the pleading standard and *Iqbal*, and thus the claims should not be dismissed on a motion to dismiss.

Moreover, other courts have noted that in sufficient quantities or varieties maltodextrin can serve more than a technical or functional effect. *See Morris v.*

*Walmart Inc.*, 2020 WL 5645812, at *4 (N.D. Ala.) (noting that maltodextrins can vary depending on their dextrose equivalent, which can cause them to become subject to labelling requirements); *Wilson v. Smartfoods, Inc.*, 2025 WL 2522822, at *2 (N.D. Ill.) (permitting a complaint to survive a motion to dismiss where it alleged that maltodextrin was not just an enhancer because it "creates 'a creamy, savory white cheddar taste by blending with . . . natural flavor ingredients, directly simulating the expected flavor"). At this stage, the Court lacks the information to determine what purpose maltodextrin serves in LMNT's Products or the composition of the maltodextrin used.[5] Without these facts in the record, the claims are plausible because the maltodextrin would be subject to labeling requirements if it has a sufficient dextrose equivalency to be classified as added sugar or it has more than a technical or functional effect. Such considerations demonstrate the type of allegations that this Court could not discount at this stage.

Second, while the claims are essentially derived from the presence of maltodextrin, Plaintiffs' claims do not rely solely on the fact that maltodextrin is

---

[5] The factual circumstances are different here than in cases with more bright line distinctions. For instance, in *Richburg v. Conagra Brands, Inc.*, where the plaintiffs alleged false and misleading advertising when the products were branded "only real ingredients" and "100% real ingredients" despite the presence of polyfluoroalkyl substances ("PFAS") on the bags. 2023 WL 1818561, at *2 (N.D. Ill.). The court in that case held that a reasonable consumer would not believe that chemicals in the wrapping to be "ingredients," particularly in light of the FDA's exemption of substances that migrate from the bag to the product from the ingredient listing requirements. *Id.* at *7. Here, the presence of maltodextrin is a question of degree rather than kind and requires fact-finding.

not listed in the ingredient list. In fact, most of the claims in the Amended Complaint rely on LMNT's advertisements that the Products are all natural and contain no artificial ingredients. Count I claims that LMNT is liable for misrepresentation for its statements that the Products do not contain artificial ingredients. (Doc. 30 at ¶ 90). Count II argues that LMNT was unjustly enriched "as a result of the conduct described in this Complaint;" such conduct includes LMNT's representations that the Products are all natural and have no artificial ingredients. *Id.* at ¶ 98. Count VII similarly references the "conduct described in detail above." *Id.* at ¶ 161. The remaining counts either reference misleading advertising specifically or rely simply on the fact that the Products contain maltodextrin. *See Id.* at ¶¶ 110, 123, 134, 146, 170, 183, 189, 196, and 201. Accordingly, the Court declines to dismiss Plaintiffs' Amended Complaint on federal preemption grounds.

**b. Misrepresentation Claims (Count I: Negligent Misrepresentation; Counts III, IV, and V: California Consumer Protection Claims; Count VI: Arkansas Deceptive Trade Practices Act; Count VII: Montana Consumer Protection Claims)**

On behalf of the nationwide class, and offered as an alternative on behalf of the subclasses, Plaintiffs assert that LMNT is liable for negligent misrepresentation in Count I. (Doc. 30 at 36). The Amended Complaint states that "[i]n the course of business, LMNT misrepresented that the Products do not contain artificial ingredients that they indeed do contain." *Id.* Plaintiffs allege that LMNT (1) had a

duty to disclose the truthful makeup of its Products; (2) supplied false and misleading information that a reasonable consumer would have relied on; (3) knew or should have known that the representations were false; (4) misrepresented the makeup of its Products or, at a minimum, negligently omitted material facts; (5) intended to induce and did induce Plaintiffs and class members to purchase the Products through its misrepresentations and omissions; and (6) injured Plaintiffs and class members because they either would not have purchased the Products or would have paid considerably less if they had known the Products contained maltodextrin. *Id.* at 36-37.

Likewise, Plaintiffs bring several state law consumer protection claims on behalf of themselves and the statewide subclasses. Each state law consumer protection claim requires Plaintiffs to prove that LMNT engaged in deceptive or misleading conduct. *Id.* at 39-50. Plaintiffs assert that LMNT is liable for each of the state law claims based upon its failure to disclose maltodextrin as an ingredient and its advertisements that label the Products as all natural, not artificial, and paleo-keto and vegan friendly.

First, LMNT argues that these claims should be dismissed because Plaintiffs have failed to demonstrate that a reasonable consumer would be misled by its advertising. (Doc. 41 at 11). Second, LMNT argues that Plaintiffs failed to sufficiently allege causation and damages. *Id.* at 27-30.

### i. Reasonable Consumer Standard

The Court applies a "reasonable consumer" standard to negligent misrepresentation and state law-based consumer protection claims. *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008) (unpublished) ("justifiable reliance cannot be established if reasonable consumers would not rely on the purported misrepresentation"); *see also McGinity v. Procter & Gamble Co.,* 69 F.4th 1093, 1096 (9th Cir. 2023) (applying reasonable consumer standard to each of the California consumer protection claims); *Souter v. Edgewell Pers. Care Co.*, 2023 WL 5011747, at *1 n.1 (9th Cir.) (unpublished) (recognizing that similar statutory consumer protection and warranty claims are all subject to a reasonable consumer standard); *Howard v. Bayer Corp.*, 2011 WL 13224118, at *1 (E.D. Ark.) (applying reasonable consumer standard to Arkansas Deceptive Trade Practices Act). Under this standard, Plaintiffs must show that "members of the public are likely to be deceived by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (cleaned up). "The reasonable consumer standard requires more than a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (citations omitted). Rather, there must be a probability that a "significant portion of the general consuming public or of targeted

consumers, acting reasonably in the circumstances, could be misled." *Id.* at 778 (citations omitted).

"The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *McGinity*, 69 F.4th at 1097. "[A] plaintiff's unreasonable assumptions about a product's label will not suffice. *Moore v. Trader Joe's Company*, 4 F.4th 874, 882 (9th Cir. 2021). In deceptive advertising claims, the court "should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* (internal citations omitted) (finding that a reasonable consumer could not be left with the conclusion that "100% New Zealand Manuka Honey" represents a claim that the product consists solely of honey derived from Manuka).

California courts have held that whether a business practice is deceptive will usually be a question of fact inappropriate for decision at the pleading stage. *Whiteside,* 108 F.4th at 778 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008)). "Dismissal is appropriate when the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.* (alterations in original) (quoting *Williams*, 552 F.3d at 939)

In its motion to dismiss, LMNT argues that Count I and each Plaintiffs' state consumer protection claims should be dismissed because its advertising would not deceive a reasonable consumer. (Doc. 41 at 13). It contends that "a reasonable consumer (i) would not expect an incidental additive component of the natural flavors ingredient to be listed as a separate ingredient, and (ii) understands that 'natural flavor' ingredients are comprised of constituent parts." *Id.* at 14. LMNT further argues that the context of its advertising confirms this conclusion: there are no misleading statements on the Products' front labels; the inclusion of Stevia Leaf Extract and Natural Fruit Flavors on the ingredients list demonstrates there are ingredients beyond the electrolytes listed on the front of the packaging; the presence of maltodextrin is paleo, keto, and vegan friendly; and LMNT's own website discloses the presence of maltodextrin as a flavor carrier. *Id.* at 18-20, 27.

Next, LMNT insists that advertisements with representations about the Products, including the absence of "dodgy ingredients" and their compatibility with paleo-keto and vegan diets constitute non-actionable "puffery." *Id.* It argues that "there is not a commonly understood definition of 'dodgy' as it relates to ingredients," and "friendly" is similarly a subjective assessment, not tied to any objective standard. *Id.* at 22-23. As for the advertisements that indicate the Products are made with "all natural ingredients" and "no artificial ingredients," LMNT maintains that maltodextrin is not an ingredient and, therefore, those

statements could not mislead a reasonable customer. *Id.* at 37. Lastly, LMNT argues that any omission-based claim fails because LMNT's website discloses the use of maltodextrin, as indicated by the Amended Complaint. *Id.* at 38 (citing Doc. 30 at ¶¶ 45-47).

According to Plaintiffs, this question -- whether LMNT's advertising would mislead a reasonable consumer -- should not be resolved on a motion to dismiss because Plaintiffs have "plausibly alleged" that LMNT is liable for its misrepresentations under federal and state law. (Doc. 47 at 21). In support, Plaintiffs cite to several other district courts that have found it plausible that a reasonable consumer is misled by the inclusion of maltodextrin in a product that is labeled or advertised as "natural." *Id.* at 24 (citing *Janney v. Mills*, 2014 WL 1266299, at *1 (N.D. Cal.); *Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at *1, 3 (N.D. Cal.); *Hall v. Diamond Foods, Inc.*, 2014 WL 3779012, at *3-4 n.5 (N.D. Cal.)).

As to the argument that maltodextrin is not an "ingredient" -- and thus stating "all natural ingredients" and "no artificial ingredients" is not misleading -- Plaintiffs counter that they have plausibly alleged that maltodextrin is present at a significant level in the final Products, disqualifying it from being construed as an incidental additive. *Id.* at 25. Plaintiffs restate their argument that LMNT can be held liable for its omission of maltodextrin from the ingredient list. *Id.* at 26. They

further point out that the Amended Complaint alleges that LMNT did not disclose maltodextrin was in the Products until after Plaintiffs made their purchases. *Id.* at 27 (citing Doc. 30 at ¶¶ 12-14, 26 n.6, 43-47). Regardless, Plaintiffs maintain that a blog or social media post cannot override deceptive advertising on the label, website, or Amazon purchase page. *Id.* (citing *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016) (unpublished) ("[P]roduct information on a website also cannot override as a matter of law any misimpressions created by the label")).

As for LMNT's argument that paleo, keto, and vegan "friendly" constitutes non-actionable puffery, Plaintiffs disagree. *Id.* at 29-30. They assert that keto and paleo "refer to specific diets that reasonable consumers understand are free from processed and artificial ingredients" and that "maltodextrin is widely understood to not be compatible with a paleo or keto diet." *Id.* at 30-31 (citing Doc. 30 at ¶¶ 30-34). Lastly, Plaintiffs contend that LMNT's statements that the Products are vegan friendly and contain no "dodgy ingredients" are not actionable in isolation, but "make it more likely that reasonable consumers would be misled by the other misrepresentations and omissions identified in the Complaint" because they contribute to the "deceptive context of the packaging as a whole." *Id.* at 33.

Construing the pleadings in the light most favorable to Plaintiffs, *Manzarek*, 519 F.3d at 1032, the Court finds that Plaintiffs have plausibly pled that a

reasonable consumer would be misled by LMNT's advertising.[6] As discussed above, whether or not maltodextrin is considered an "ingredient" pursuant to federal regulations depends on whether it is present in the finished Products at a significant level, a determination that is not proper to make at this time. Another court considering the issue earlier this summer found that similar claims against LMNT were sufficient to survive a motion to dismiss. *Sciortino v. Drink LMNT, Inc.*, 2026 WL 2369555, at *8 (E.D.N.Y.) (holding the complaint sufficiently alleged that LMNT's representations would mislead a reasonable consumer by representing that the Products were keto and paleo friendly when they were not).[7]

---

[6] As noted *supra* n. 5, the test for whether maltodextrin is an ingredient requiring a separate entry on the list is not a bright line test. If maltodextrin is an ingredient, it would seemingly make the representations, "all natural ingredients" and "no artificial ingredients" false. *See Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1079-91 (N.D. Cal. 2017) (distinguishing between vague, unverifiable puffery and more definite actionable claims). The specification of "all natural" and "no artificial" specifically regarding ingredients poses a different factual basis than that of other cases where these adjectives have constituted puffery. *See Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973, 978-79 (C.D. Cal. 2013) (dismissing claims where the plaintiff failed to create a cohesive definition of "natural").

[7] While the Court is inclined at this juncture to allow the claims to proceed due to the need for more factfinding, it has no basis to be aligned with the *Sciortino* Court's view that the Products are "not" friendly to the keto and paleo diets. 2026 WL 2369555, at *8. It is not clear to the Court that the 2 grams of carbohydrates contained in the Products are adverse to a ketogenic diet, which advocates restricting net carbs to 20 to 50 grams per day. (Doc. 30 at ¶ 25); *Walcoff v. Innofoods USA, Inc.*, 2023 WL 3262940, at *9 (S.D. Cal.) (finding that a serving size of 4g net carbs and 3g sugars was not sufficient to make a product incompatible with the keto diet). Though the paleo claims are more plausible, as LMNT argued at the hearing, the Court questions how any flavored drink mix could reasonably be described as conforming to the paleo diet as outlined in the Amended Complaint. (Doc. 30 at ¶¶ 31-32). It seems unlikely that a reasonable consumer would imagine that early hunter-gatherer humans were foraging for mango chili drink mixes. This suggests that to sustain the claim, Plaintiffs are not required understand the conditions of their own diet or that LMNT's representations were so misleading that Plaintiffs believed that these drink mixes were crafted entirely from ingredients or their analogs that could be foraged by early humans, and that such a belief was reasonable based on those

Plaintiffs have plausibly pled that maltodextrin functions as an ingredient in the final Products. Thus, it is not appropriate to dismiss Plaintiffs' claims that "all natural ingredients" and "no artificial ingredients" is misleading. Plaintiffs have also plausibly pled that the presence of maltodextrin is not paleo or keto friendly. LMNT has not demonstrated that its advertisements make it impossible for a reasonable consumer to be deceived.

**ii. Causation**

LMNT asserts that "Plaintiffs cannot establish the element of causation for any of their claims because Plaintiffs allege no deceptive act or unfair practice by LMNT that led them to purchase the product." (Doc. 41 at 41). LMNT claims that "Plaintiffs fail to allege where (or even ***if***) they viewed ***any*** of the challenged advertisements." *Id.* at 42 (emphasis in original). Plaintiffs counter that the Amended Complaint does state that each Plaintiff saw the challenged advertisements prior to purchasing the Products and relied on them when purchasing. (Doc. 47 at 38) (citing Doc. 30 at ¶¶ 12-14). These representations are sufficient; Plaintiffs have plausibly alleged causation.

---

representations alone. Like the court in *Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103, 1147-48 (S.D. Cal. 2021), the Court finds it "curious" that these consumers believed the Products contained no artificial or processed ingredients but will accept the allegations as true at this stage. However, going forward, the Court would expect Plaintiffs to more clearly define the keto and the paleo diets and describe how the Products deceive consumers into breaking their diets.

**iii. Injury**

To properly plead an economic injury, a consumer must allege that they were exposed to false information about the product purchased, without which they would either not have purchased the product or would not have been willing to pay the purchase price. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013)). A "quintessential injury-in-fact" can occur when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent." *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 765-67 (N.D. Cal. 2024) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)).

LMNT states that "Plaintiffs' state-law consumer protection claims fail because they do not allege they suffered an economic injury, actual damages, or an ascertainable loss." (Doc. 41 at 38). LMNT has a no-questions-asked refund policy. *Id.* at 39. Thus, LMNT contends that Plaintiffs' economic injury is negated in light of the unconditional refund policy. *Id.* at 40. To the extent that Plaintiffs claim they paid more than they would have if they had known about the maltodextrin, LMNT asserts they have not "pleaded facts demonstrating they overpaid for the Product." *Id.* at 41. LMNT maintains that "Plaintiffs still paid for—and got the benefit of—an electrolyte drink mix with the advertised amount of electrolytes." *Id.*

Plaintiffs argue that "[u]nder the statutory consumer claims alleged, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." (Doc. 47 at 34). The Amended Complaint properly alleges that had the Plaintiffs known "the Products were made with maltodextrin, a highly processed and synthetic ingredient that is not found in nature, they would have purchased a different product, or paid significantly less for the Products." *Id.* at 36 (citing Doc. 30 at ¶ 54). Plaintiffs assert that, even in light of LMNT's refund policy, they have suffered injury "as a matter of law because consumers who receive refunds still suffer injuries from the diminished time value of the money that was used to purchase the products." *Id.* (citing *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) ("Finally, the existence of a money-back guarantee is insufficient reason as a matter of law to preclude a monetary remedy."); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("In sum, we hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III.")). Furthermore, Plaintiffs argue that the "refund policy presents issues of fact outside of the Complaint that are inappropriate for resolution at this stage, such as how long the refund policy has been in place, how it is presented, and whether (or to what extent) it is actually honored." *Id.* at 37.

Plaintiffs have plausibly alleged an economic injury by including in the Amended Complaint that they would have purchased a different product or paid

less for the Products if they were aware of the presence of maltodextrin. (Doc. 30 at ¶ 54). This allegation is sufficient to survive a motion to dismiss. The terms of LMNT's refund policy, the extent to which it was available to Plaintiffs, and whether it is honored in practice are all factual questions not appropriate for resolution on a motion to dismiss.

**c. Rule 9(b) Fraud-Based Claims Heightened Standard**

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The rule applies to state law causes of action. *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103 (9th Cir. 2003). The "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The plaintiff must plead the "who, what, when, where, and how of the misconduct charged." *Id.* A party alleging fraud must "set forth *more* than the neutral facts necessary to identify the transaction." *Id.* (citations omitted) (emphasis in original). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Id.*

In false advertising cases, the plaintiff must allege when they were exposed to the advertisement, where the advertisement appeared, what type of

advertisement it was, what was false or misleading about the advertisement, and why that component was false. *Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F.Supp. 3d 863, 877-78 (N.D. Cal. 2023) (compiling cases).

According to LMNT, Plaintiffs do not allege that they viewed and relied on the statements at issue (the Products contain "no dodgy ingredients" and are "Paleo-Keto" and vegan "friendly") in making their purchasing decisions. (Doc. 47 at 21). As for the advertisements that the Products are made with "all natural ingredients" and "no artificial ingredients," LMNT asserts that Plaintiffs fail to "plausibly allege LMNT used those advertisements or that Plaintiffs viewed them ***prior to*** making their purchasing decision." *Id.* at 25 (emphasis in original). LMNT clarifies that Ms. Scolaro and Mr. Jarosky only allege they viewed those statements on their receipt from Amazon after purchasing the Products. *Id.* LMNT alleges that this failure requires dismissal of Plaintiffs' fraud-based claims pursuant to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *Id.* at 31.

Plaintiffs argue that they have met this standard. First, they maintain that the Amended Complaint does include allegations that Plaintiffs Scolaro and Jarosky viewed the representations that the Products contain "all natural ingredients" and "no artificial ingredients" on Amazon's description prior to purchasing the

Products. (Doc. 47 at 23) (citing Doc. 30 at ¶¶ 13-14). They additionally point out that the Amended Complaint includes an image of these representations made on LMNT's website from 2022. *Id.* (citing Doc. 30 at ¶¶ 12, 25 n.4). Thus, Plaintiffs conclude that the Amended Complaint "provides detailed information about Defendant's misrepresentations and omissions, as well as the circumstances of Plaintiffs' Product purchases and reliance on Defendant's misrepresentations and omissions." (Doc. 47 at 25). They argue that "[n]othing else is needed to satisfy the pleading standard in a consumer protection case like this." *Id.*

Each of the Plaintiffs allege when and where they were presented with the advertisements, immediately prior to the point of sale on Amazon and LMNT's websites. They also allege what types of advertisements they were: signals and wording on packages and the websites' depiction of the Products as non-artificial and paleo-keto friendly. They allege that the false component of the advertisements was that they described the Products as natural, free of artificial ingredients, and paleo-keto friendly. Lastly, they allege that this representation was false because the presence of maltodextrin renders the Products artificial and incompatible with those diets.

The Court finds that these allegations are sufficient under the pleading standards to meet Plaintiffs' burden under Federal Rule of Civil Procedure 9(b). Accordingly, the motion to dismiss is denied on this ground.

**d. Count II: Unjust Enrichment / Restitution**

As to Plaintiffs' unjust enrichment claims, LMNT asserts Plaintiffs have not met their burden to plausibly plead that they did not receive the benefit of their bargain and, thus, the unjust enrichment claims fail under Montana and Arkansas law. (Doc. 41 at 45). In a footnote, LMNT also argues that "California law 'does not recognize an independent cause of action for unjust enrichment." *Id.* at 46 n. 17 (quoting *Klaehn v. Cali Bamboo, LLC*, 2022 WL 1830685, at *2 (9th Cir.).

To succeed on a claim of unjust enrichment in Montana, the plaintiff must establish that "(1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so." *Missoula Cnty. v. Montana*, 547 P.3d 1268, 1275 (Mont. 2024) (citations omitted). Under Montana law, "[u]njust enrichment is not available where an adequate legal remedy is available to the claimant." *Yellowstone Ins. Exch., RRG v. Broadwater Health Ctr.*, 2025 WL 438302, at *3 (D. Mont.). However, "no controlling authorities hold that an unjust enrichment claim cannot be sustained when a plaintiff pleads legal claims in the alternative." *In re Snowflake, Inc., Data Breach Litig.*, 2025 WL 3023009, at *12 (D. Mont.).

Similarly, in Arkansas, "[t]o find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she

must restore." *DePriest v. AstraZeneca Pharms., L.P.*, 351 S.W.3d 168, 179 (Ark. 2009) (dismissing a claim for unjust enrichment where the defendant's alleged conduct is permitted by federal law).

In California, the United States Court of Appeals for the Ninth Circuit has clarified that California does allow claims for unjust enrichment. *See Bruton v. Gerber Products Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017) ("The district court erred in dismissing Bruton's claim for unjust enrichment/quasi-contract. At the time when the district court dismissed this claim, California's case law on whether unjust enrichment could be sustained as a standalone cause of action was uncertain and inconsistent. But since then, the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute").

LMNT argues that Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not alleged that "the Product was not fit for consumption, unable to be consumed, or did not meet their taste and flavor expectations." (Doc. 41 at 46). LMNT insists that it has not "retained the purchased price 'under circumstances rendering it inequitable.'" *Id.* at 46 (citing *Missoula Cnty.*, 547 P.3d at 1276).

In response, Plaintiffs emphasize that other courts in the Ninth Circuit have considered similar unjust enrichment claims to be based in "quasi-contract" when

defendants make false representations on a food label. (Doc. 47 at 42) (citing *Khasin v. Hershey Co.*, 2012 WL 5471153 (N.D. Cal.); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *11 (N.D. Cal.). Additionally, Plaintiffs point out that the unjust enrichment claims brought on behalf of the statewide subclasses are brought in the alternative. *Id.* at 43-44.

While Plaintiffs' cited cases do support their proposition, those cases do not elaborate on their rationale for allowing unjust enrichment to survive when the underlying basis is deceptive advertising. Both cases were concerned with whether unjust enrichment was an allowable cause of action under California law and did not devote any attention to the question at hand. *Khasin*, 2012 WL 5471153, at *9; *Astiania*, 2011 WL 2111796, at *11.

More compelling is the reasoning of Ninth Circuit, "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("there is no proof that the services which were rendered to him were defective or that he in any other way did not receive value for the money which he paid"). The allegations of this case are not that LMNT's Products are defective or not fit for consumption, only that they contain an ingredient which was insufficiently disclosed. Plaintiffs' allegations do not dispute that they received what they paid for: a flavoring mix for drinks. While they plausibly articulate that

they were misled into favoring LMNT's Products over other products, they do not contend that the Products were defective, only that they were dissatisfied. Accordingly, the motion to dismiss is granted as to the unjust enrichment claims.

**e. Injunctive Relief**

A jurisdictional dismissal under Rule 12(b)(1) is appropriate where the alleged claim is "wholly insubstantial and frivolous" and capable of resolution without going to the merits of the underlying action. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039-40 (9th Cir. 2004) (quoting *Sun Valley Gas., Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139-40 (9th Cir. 1983)). A plaintiff seeking injunctive relief must demonstrate a "real or immediate threat that [they] will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The threat must be a "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The Ninth Circuit has recognized that "a previously deceived consumer" has standing to pursue injunctive relief because they would otherwise lack knowledge whether the product's representations will "remain false in the future." *Davidson*, 889 F.3d at 969.

LMNT contends that Plaintiffs' assertions that they have stopped "ingesting and purchasing LMNT" nullifies any likelihood of future harm, precluding Plaintiffs from establishing Article III standing for injunctive relief. (Doc. 41 at

44) (quoting Doc. 30 at 21). Plaintiffs assert that "that they intend to purchase electrolyte beverages without maltodextrin in the future and are therefore at risk of being deceived by Defendant's continuing misrepresentations and omissions." (Doc. 47 at 40) (citing Doc. 30 at ¶ 81).

Under the governing standard of *Davidson*, a plaintiff has standing to pursue injunctive relief where they have no way of knowing whether the misrepresentation complained of has been cured before they purchase the product again. Subsequent cases applying the standard have determined that a plaintiff lacks standing if the information is readily determinable by looking at the label or other information. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. 2021) (compiling cases).

Plaintiffs admit that LMNT now discloses the amount of maltodextrin the Products contain on their website. (Doc. 30 at ¶ 47). However, Plaintiffs also allege that the website and social media have previously been a source of misinformation. (Doc. 30 at ¶¶ 43-50). Plaintiffs' knowledge that LMNT's Products contain any maltodextrin is sufficient to avoid these harms in the future. Given that LMNT has publicly announced on their website that the Products contain maltodextrin, the information necessary to avoid Plaintiffs' alleged harms is readily available. Accordingly, they do not have standing to pursue injunctive relief.

**f. Equitable Relief**

A plaintiff must establish that they lack an adequate remedy at law before securing equitable relief. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). LMNT claims Plaintiffs are not entitled to their claims for equitable relief because they are not without an adequate remedy at law. *Id.* at 33-34. Plaintiffs cite to case law suggesting that they only need to plead that they "might lack an adequate remedy at law." (Doc. 47 at 41) (citing *Timmins v. Unilever United States, Inc.*, 785 F. Supp. 3d 774, 784 (E.D. Cal. 2025)). However, they offer no rebuttal to the assertion that they have adequate remedies at law. LMNT points out that courts often reject an argument that plaintiffs can plead equitable remedies in the alternative. (Doc. 41 at 45) (citing *Clevenger v. Welch Foods Inc.,* 2022 WL 18228288, at *4-5 (C.D. Cal.) (collecting cases dismissing equitable claims pleaded in the alternative)).

Governing Ninth Circuit law is dispositive: to be entitled to equitable relief under *Sonner*, the complaint must "allege that [the plaintiff] lacks an adequate legal remedy." *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1095 (N.D. Cal. 2024) (alteration in original) (quoting *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal)). Plaintiffs may not plead equitable relief as a backup if their legal claims fail; they must actually lack

adequate relief at law. Clearly Plaintiffs believe that they possess viable legal claims. Accordingly, the motion to dismiss is granted as to all portions of the claims seeking equitable relief.

**g. Breach of Implied Warranty (Counts VIII and IX)**

LMNT argues that the Amended Complaint fails to "show how the Product breaches" the standard for implied warranty. (Doc. 41 at 46). It maintains that "Plaintiffs' allegations relate only to their own subjective misunderstanding of the Product's labeling and do not suffice to show a breach of the implied warranty of merchantability." *Id.* Additionally, LMNT argues that there was no breach of fitness for a particular purpose because they did not allege that the intended purpose -- to hydrate -- was not met. *Id.* at 47. Lastly, LMNT argues that there are no allegations to show that LMNT was aware of any other purpose that Plaintiffs sought to use the Products at the time of contracting and, therefore, they cannot succeed on a subjective purposes theory of implied warranty. *Id.*

Plaintiffs argue that labels or advertisements can constitute warranties. (Docs. 30 at ¶¶ 171 and 182; 47 at 36-38) (citing *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *10 (S.D. Cal.)). Specifically, Plaintiffs contend that the allegedly false representations of "Natural," free from "artificial" and "dodgy" ingredients, and "Paleo-Keto Friendly" breached the implied warranty. *Id.*

In interpreting implied warranty, little caselaw addresses the issue of advertising. In *Branca*, the court held that failure to disclose that an ingredient was artificial when it could be either artificial or natural was sufficient to permit a complaint to survive a motion to dismiss. 2019 WL 1082562 at *11. The Ninth Circuit has required that the disclosure of an unhealthy ingredient be clear, not hidden in the ingredient list while contradicted by the broader packaging. *Williams*, 552 F.3d at 939-40.

As with many other issues, the limited facts at this stage of the case and its procedural posture cause the Court to rule against dismissal of the implied warranty claims. The reasoning of the Court of Appeals in *Williams* makes it clear that LMNT cannot hide behind FDA labeling requirements to make otherwise false claims. Similarly, too little information exists in the record regarding the amount and nature of the maltodextrin used in LMNT's Products to permit dismissal at this stage. Accordingly, the Court denies the motion to dismiss the implied warranty claims.

**h. Breach of Express Warranty Under State Law (Counts X, XI, and XII)**

In California, a breach of express warranty claim requires a plaintiff to "allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his or her injury." *Branca*, 2019 WL 1082562, at *10. "Any description of the goods which is made part of the basis of the bargain

creates an express warranty that the goods shall conform to the description." *Id.* (citing Cal. Com. Code § 2313(a)(b)). A food label can create an express warranty. *See e.g., Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 900 (N.D. Cal.).

Likewise, in Arkansas, labeling a product "natural" can constitute an actionable express warranty. *See e.g., Center v. ConAgra Foods, Inc.*, 2015 WL 4106473 (W.D. Ark.) (defendant's statements that its cooking oil products were 100% natural were part of the basis of the bargain, establishing a viable claim for breach of express warranty); *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386 (W.D. Ark.) (defendant's statements that its tomato products were "100% Natural" and "free of artificial ingredients" were affirmative claims sufficient to make out a claim for breach of express warranty).[8]

For the breach of express warranty claims, LMNT invokes the same arguments it made in opposition to dismissal of the implied warranty claims. (Doc. 41 at 47). It further argues that the Amended Complaint insufficiently alleges that the Products did not provide the promised benefits -- superior

[8] The issue of labeling a product as "natural" and similar claims have not been developed under Montana's express warranty laws, nor do the parties argue them in the briefing. However, Montana's statute largely mirrors that of Arkansas and California and is similarly derived from the Uniform Commercial Code. Mont. Code Ann. § 30-2-313. Accordingly, in the absence of contrary authority, for the limited purpose of resolving the pending motion to dismiss, this Court will apply a parallel construction.

hydration -- and fails to identify any other promised benefit that a reasonable consumer would rely on in purchasing the Products. *Id.* at 48. For the California claim, LMNT argues that remedy is barred under California Commercial Code § 2607(3)(A) because Plaintiffs did not notify LMNT of the alleged breach "within a reasonable time."[9] (Doc. 41 at 48). Plaintiffs' claims similarly describe that LMNT breached their express warranties that the Products were "Natural," free from "artificial" and "dodgy" ingredients, and "Paleo-Keto friendly." (Docs. 30 at ¶¶ 190, 196, and 201; 47 at 34-38).

For the same reasons noted with respect to the implied warranty claims, the Court finds that the express warranty claims should survive the motion to dismiss.

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that LMNT's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Count II, the request for injunctive relief, and all other requests for equitable relief are dismissed with prejudice.

The Clerk of Court is directed to notify the parties of the making of this Order.

[9] LMNT does not suggest what timeframe would have been reasonable. Plaintiff Scolaro is alleged to have purchased LMNT Products at least through February 21, 2023. It is not clear whether Scolaro attempted to obtain a refund or any other remedy prior to filing suit. Without these facts developed in the record, the Court will not dismiss the claim.

DATED this 21st day of September, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE